Eliseo CHAPA, Appellant,

v.

BENAVIDES MILL & GIN COMPANY et al., Appellees.

No. 14586.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 4, 1967.

William H. Shireman, Corpus Christi, for appellant.

Lloyd, Lloyd, Dean & Ellzey, Perkins, Floyd, Davis & Oden, Alice, for appellees.

CADENA, Justice.

This suit was originally filed by plaintiff, Eliseo Chapa, appellant here, against several defendants to recover for personal injuries sustained by him on July 23, 1962, while working at a cotton gin in Duval County. As a result of the action of the trial court in sustaining preliminary pleas, the only remaining parties defendant are the appellees, Benavides Mill & Gin Company, a corporation (herein called "the Company"), and Alberto Garcia, both of whom were alleged by plaintiff to be his employers. On April 29, 1966, the trial court entered an interlocutory order granting the Company's motion for summary judgment. On September 16, 1966, following a trial in which the jury found that Garcia was not plaintiff's employer at the time of the injury, the trial court entered final judgment in favor of the Company and Garcia.

The Company's motion for summary judgment recited that it was based on the attached affidavit of its secretary-treasurer, George Hoffman, and on the "pleadings, depositions, testimony heretofore taken in connection with this case, together with all exhibits attached hereto and heretofore offered into evidence and received in evidence under the rulings of the court." The only possible basis for the granting of the motion for summary judgment is that plaintiff failed to raise an issue of fact supporting his contention that the Company was his employer.

Essentially, the Company contended that on May 15, 1961, more than a year prior to plaintiff's injury, it had, by written instrument, leased the premises on which the gin was situated to Alberto Garcia for a term of five years, and that, at the time plaintiff was injured, the gin was being operated solely by Garcia as the Company's tenant, with the Company neither having nor exercising any right to control the operation of the gin by Garcia. Specifically, the Company contended that it was never the employer of plaintiff or of any other person working at the gin at the time of plaintiff's injury. This defensive theory of the Company was sustained by the allegations contained in the affidavit of Hoffman. However, no copy of the lease instrument was attached to either the motion for summary judgment or to Hoffman's affidavit in support of such motion.

Plaintiff filed no answer to the motion for summary judgment, nor did he file any affidavits in opposition thereto.

The "testimony heretofore taken in connection with this case," referred to in the motion for summary judgment and, according to the order granting such motion, considered by the court, consisted of evidence heard by the court on October 9, 1964, in connection with preliminary pleas filed by defendants other than these appellees. A transcript of this testimony, prepared and properly certified by the court reporter, was filed with the clerk of the court at the time the motion for summary judgment was filed. During the 1964 hearing, Garcia testified that in 1962 he was operating the gin as manager for the Company. At this point, the court allowed counsel for the Company to subject Garcia to voir dire examination. After Garcia had identified an instrument as the agreement between him and the Company executed on May 15, 1961, the Company objected to "any further testimony" at variance with the terms of the written instrument, and offered such instrument in evidence. This instrument, the agreement between Garcia and the Company, is the purported lease on which the Company relies in support of its contention that it was not plaintiff's employer.

Under the terms of the agreement, Garcia agreed to discontinue operating another gin owned by him in Duval County, and further agreed that he would not sell or lease such gin to any person who would operate it in such county. The instrument gave to Garcia the right to haul cotton at regular commercial rates, with his own or rented equipment, and recited that Garcia was authorized to make loans, not exceeding $50.00 in

amount, to farmers who brought cotton for ginning to the gin located on the leased premises.

Paragraph VIII of the agreement obligated both parties to "use their best efforts for the mutually successful operation of the cotton gin." This same paragraph, after providing that Garcia was to receive certain amounts monthly to defray expenses incurred by him during the ginning season, stipulated that, after certain expenses were deducted, "any remaining profits" were to be equally divided between Garcia and the Company.

Paragraph IX of this instrument reads, in its entirety, as follows: "Lessor assumes full responsibility and direction for the operation of the gin and agrees to save Lessor harmless from all liability on account of such operation during the term of this lease."

It cannot be said that this instrument establishes that in 1962 the gin was being operated solely by Garcia and that the interest of the Company in the ginning operation was merely that of a lessor of the premises. Paragraph IX, as written, does not place full responsibility for the operation of the gin on Garcia. It is clear that the trial court interpreted Paragraph IX as though the first word in the paragraph, "Lessor," read "Lessee," thereby imposing on Garcia responsibility for the operation of the gin and obligating him to save the Company harmless, thus avoiding the incongruity of having the lessor (Company) agreeing to save itself harmless. Under ordinary circumstances, this correction would be clearly indicated. But, since Paragraph VIII expressly places on both Garcia and the Company the obligation to use their best efforts to insure the successful operation of the gin, it is impossible, with any degree of confidence, to determine, from the instrument itself, the proper place to substitute "lessee" for "lessor" in Paragraph IX. Further, wherever the substitution is made the result is that Paragraph IX attempts to impose on one party full responsibility for the opera-

tion of the gin, while Paragraph VIII expressly obligates both Garcia and the Company to act in furtherance of the ginning enterprise.

In addition, it appears from the written agreement that Garcia was engaged in a cotton-hauling operation, and the testimony of both Garcia and Hoffman given during the October, 1964, hearing establishes that Garcia was also using the cotton gin premises as headquarters for his own cotton-buying business. The written agreement expressly excludes the Company from participation in the cotton-hauling activities of Garcia, and the testimony of Hoffman and Garcia shows that the Company had no interest in the cotton-buying activities of Garcia. On the other hand, the instrument expressly provides for some action by the Company in furtherance of the ginning enterprise.

The Company, as movant for summary judgment, assumed the negative burden of showing that, as a matter of law, plaintiff had no cause of action against it. Gibler v. Houston Post Co., 310 S.W.2d 377 (Tex.Civ.App., 1958, writ ref'd n.r.e.); Neigut v. McFadden, 257 S.W.2d 864, 868 (Tex.Civ.App., 1953, writ ref'd n.r.e.). Because of the ambiguity of the language of the written agreement, it is impossible to determine, without the aid of extrinsic evidence, the true intent of the parties concerning the ginning operation. The record before us does not establish, as a matter of law, that the intent of the parties was to effectuate a complete disassociation of the Company from the management of the gin. While the affidavit of Hoffman recites that, under the agreement, the Company had no interest in the ginning operation and had no right to control such operation, such recitals are no more than Hoffman's opinion concerning the correct interpretation of language which falls far short of conveying one plain and unambiguous meaning. The facts sworn to by Hoffman which, if true, would support the conclusion that the ginning operation was the exclusive concern of

Garcia are contradicted by much of the testimony of Garcia which was heard without objection during the 1964 hearing.

Further, in his deposition, Pedro Hinojosa testified that he was operating the gin in 1962 when plaintiff was injured, having been employed by the Company's president in 1961.

■ Evaluation of the record convinces us that reasonable minds might differ as to the truth of a controlling fact situation, namely, the nature of the relationship between the Company and Garcia and of the relationship between the Company and plaintiff. Under such circumstances, the trial court erred in granting the Company's motion for summary judgment. Boucher v. Texas Turnpike Authority, 317 S.W.2d 594 (Tex.Civ.App., 1958, no writ). See also Tinnin v. Crook, 333 S.W.2d 617 (Tex.Civ. App., 1960, writ ref'd n.r.e.), holding that where there is a question relating to the true meaning of an ambiguous instrument, summary judgment is improper. This rule would certainly seem to be applicable where the resolution of the ambiguity requires a determination of intent by reference to extrinsic evidence which is, as here, inconclusive.

We find in the record two copies of the purported lease agreement other than that introduced by the Company during the voir dire examination of Garcia. Each of these three instruments differs from the other two insofar as Paragraph IX is concerned. In one of the copies the first word in Paragraph IX is "Lessee," rather than "Lessor," as in the copy identified by Garcia. In the third copy, the first word in Paragraph IX, as originally written, is "Lessor," but a line has been drawn through it and the word "Lessee" has been printed by hand above it. We are not convinced that these two additional copies were properly before the court in connection with the motion for summary judgment, but, in any event, their presence in the record merely raises an additional fact issue, since it is apparent that only one of the three copies is a true copy of the instrument actually signed by Garcia and the Company.

Appellant contends that the trial court erred, during the jury trial of the issues relating to Garcia's liability to him, in admitting testimony to the effect that Garcia was not plaintiff's employer, and in submitting to the jury the issue inquiring whether, at the time of the alleged injury, Garcia was plaintiff's employer. Appellant's theory is that the action of the trial court in granting the Company's motion for summary judgment conclusively established that the relationship between Garcia and appellant was that of employer and employee. We overrule this contention.

■ In considering the Company's motion for summary judgment, the trial court was concerned only with the relationship between appellant and the Company. At most, the action of the trial court in granting the motion for summary judgment merely reflected the court's conclusion that there was no "evidence" which would support the inference that appellant was the employee of the Company. This conclusion was not dependent for support upon a finding that, as a matter of law, appellant was the employee of Garcia.

■ There is nothing in appellant's brief, nor in the record, to suggest that the trial court's action in granting the Company's motion for summary judgment in any way hampered appellant in his effort to show that he was the employee of Garcia. The evidence concerning the relationship between appellant and Garcia was fully developed during the jury trial.

The portion of this litigation concerning the liability of appellee Benavides Mill & Gin Company to appellant is severed from the remainder of the case, and the judgment of the trial court granting the motion for summary judgment of Benavides Mill & Gin Company is reversed and the cause is remanded for further proceedings. The

portion of the judgment below denying appellant recovery against appellee Alberto Garcia is affirmed.

The costs of this appeal are taxed one-half to appellant, Eliseo Chapa, and one-half to appellee Benavides Mill & Gin Company.