CINCO EXPLORATION COMPANY,
Appellant,

v.

AMERICAN BANK OF COMMERCE
et al., Appellees.

No. 853.

Court of Civil Appeals of Texas,
Tyler.

Nov. 13, 1975.

Rehearing Denied Dec. 4, 1975.

Brantly Harris, Prappas, Caldwell & Moncure, Houston, F. Wilbert Lasater, Potter, Lasater, Guinn, Minton & Knight, Tyler, for appellant.

Clarence N. Stevenson, Fly, Moeller & Stevenson, Victoria, Mike Hatchell, Ramey,

Flock, Hutchins, Grainger & Jeffus, Tyler, for appellees.

MOORE, Justice.

This is an appeal from a summary judgment. Appellant, Cinco Exploration Company (Cinco), brought suit against American Bank of Commerce of Victoria (American) and Citizens First National Bank of Tyler (Citizens) for the sum of $30,000.00 which Citizens allegedly wrongfully disbursed contrary to Cinco's written instructions. While American was originally a party defendant, the trial court rendered judgment in its favor from which no appeal was taken and therefore further mention of the issue between American and Cinco is unnecessary. Citizens answered the suit with a general denial.[1] Thereafter, Cinco and Citizens both filed motions for summary judgment under Rule 166–A, Texas Rules of Civil Procedure. After a hearing the trial court granted Citizens' motion for summary judgment and entered a take nothing judgment against Cinco.

We reverse and remand for a trial on the merits.

The material facts are not in dispute. On November 9, 1973, Cinco Exploration Company entered into a letter agreement with Paul B. Goodgame and S. Harry Bergman by which Goodgame and Bergman agreed to assign an oil and gas lease to Cinco. In substance the agreement provided that Goodgame and Bergman would use their

1. Citizens also filed a cross action against American but dismissed the same prior to judgment.

2. The pertinent provisions of the letter agreement are as follows:
   "2. Goodgame and Bergman agree to assign to Cinco Exploration Company the lease described in Article 1 of this agreement, * * *.
   "3. Messrs. Goodgame and Bergman will exercise their best efforts on or before Nov. 18, 1973, to obtain full execution of the amendments shown as Exhibits 'A' and 'B' of this agreement and made a part hereof, to an Oil, Gas and Liquid Hydrocarbon Lease.

best efforts to obtain two amendments to the lease to be executed by the lessors. The instrument provided that upon receipt of satisfactory evidence of acceptance of the lease amendments by the landowners, Cinco would pay Goodgame and Bergman the $30,000.00. The letter agreement further provided that the agreement would terminate if for any reason the $30,000.00 was not paid on or before November 18, 1973.[2] Goodgame and Bergman executed the lease assignment assigning the lease to Cinco and attached it to a documentary draft for $30,-000.00 which they placed with Citizens First National Bank of Tyler, Texas, on November 16, 1973, for collection. Citizens forwarded the draft to its correspondent American Bank of Commerce of Victoria, Texas, for presentment and collection. American received the documentary draft on November 19, 1973, and presented the draft to Cinco for payment. Cinco advised American that the draft was not in compliance with the letter agreement because the two lease amendments were not enclosed and that Cinco had not received any other evidence that the amendments had been accepted by the lessors. The following day, acting pursuant to Cinco's instructions, with funds supplied by Cinco, American wrote a letter to Citizens enclosing a cashier's check payable to Citizens in the sum of $30,000.00, together with a copy of the letter agreement relating to the assignment of the oil and gas lease. The assignment was not returned. Omitting the formal parts, the letter stated:

"4. Upon delivery of the assignment referred to in Article 2 of this agreement, and upon the receipt of satisfactory evidence by Cinco Exploration Company of acceptance by the Cameron Minerals Group of the lease amendments shown as Exhibit 'A' and 'B' of this agreement, Cinco shall pay to Paul B. Goodgame and S. Harry Bergman, jointly, the cash sum of $30,000.00.

"8. Notwithstanding anything to the contrary, this agreement shall terminate without prejudice to either party and be of no further force and effect if for any reason the cash sum of $30,000.00 called for under Article 4 of this agreement is not paid on or before November 18, 1973."

"Enclosed is a Cashier's Check for payment of your site draft dated November 16, 1973 payable to Mr. Paul B. Goodgame and Mr. S. Harry Bergman pursuant to article eight of the letter agreement dated November 9, 1973 between Mr. Goodgame, Mr. Bergman and Cinco Exploration Company (copy enclosed). Your payment is contingent upon performance of all other articles of the letter agreement and will constitute an unreserved acceptance of the lease assignment upon performance of all articles in the subject letter agreement, including, but not limited to the execution of the lease amendments A and B indicated in article four of the letter."

Upon receipt of the letter and cashier's check Citizens inquired of Bergman whether he had done everything he should do; upon an affirmative answer, Citizens deposited the $30,000.00 to the account of Goodgame and Bergman. Thereafter, on January 18, 1974, American's attorney wrote Citizens stating that it had been advised by Cinco that the provisions of the agreement had not been performed by Bergman and Goodgame. American's attorney returned the assignment executed by Bergman and Goodgame and demanded return of the $30,000.00 to American. When Citizens refused, Cinco instituted the present suit against Citizens on March 27, 1974.

Appellant seeks a reversal of the summary judgment on the ground the Citizens' summary judgment proof fails to establish that no material issue of disputed fact remained to be determined by the court or jury.

A summary judgment is appropriate only if the summary judgment record establishes a right thereto as a matter of law. Thus, it is well established that a defendant moving for a summary judgment assumes the negative burden of showing as a matter of law that the plaintiff had no cause of action against him. *Gaddis v. Smith*, 417 S.W.2d 577, 582 (Tex.1967); *Neigut v. McFadden*, 257 S.W.2d 864, 868 (Tex.

Civ.App.—El Paso 1953, writ ref'd n. r. e.). Where a summary judgment is granted upon the motion of the defendant, as here, the question is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex. 1970).

Cinco contends that when Citizens accepted the $30,000.00 cashier's check and undertook disbursement in accordance with American's letter of transmittal, Citizens became the agent of Cinco as a matter of law. Based on this premise, Cinco contends that as its agent, Citizens had a duty to follow the instructions contained in American's letter of November 23, 1973. Cinco argues that since the undisputed summary judgment proof shows that Citizens failed to require Bergman and Goodgame to furnish the lease amendments or satisfactory evidence that the amendments were acceptable to the lessors, Citizens breached its duty as agent, and thus became liable to Cinco as a matter of law. Cinco further contends that the summary judgment proof raised certain fact issues which could only be determined upon a trial. Consequently, Cinco urges that the court erred in granting a summary judgment in favor of Citizens.

Citizens undertakes to uphold the summary judgment on the ground that no agency relationship existed between it and Cinco and therefore it owed no duty and breached no duty to Cinco. Alternatively, Citizens argues that if it owed a duty the summary judgment proof conclusively shows it discharged its obligation to Cinco.

Generally speaking a delivery of money or property to a bank for application to a defined purpose does not constitute a "special deposit" as that term is usually employed, but ordinarily it partakes of the nature of a special deposit in that the title to the thing remains in the depositor and the bank becomes either an agent, bailee or trustee of the depositor, depending upon

the agreement of the parties. 9 C.J.S. Banks and Banking § 275, p. 570; *Hudnall v. Tyler Bank and Trust Co.*, 458 S.W.2d 183 (Tex.1970); *Shaw v. McCord*, 18 S.W.2d 200 (Tex.Civ.App.—Eastland 1929, no writ); *First National Bank of Ranger v. Price*, 262 S.W. 797 (Tex.Civ.App.—El Paso 1924, no writ); *McBride v. American Ry & Lighting Co.*, 60 Tex.Civ.App. 226, 127 S.W. 229 (1910, no writ). Where a depositor makes a deposit for a special purpose, he may direct the manner in which the funds are to be disbursed by the bank and if the bank does not refuse the deposit, its consent to handle the funds in such manner will be implied as a matter of law. 10 Am.Jur.2d Banks, sec. 342, p. 306; *City State Bank v. National Bank of Commerce*, 261 S.W.2d 749 (Tex. Civ.App.—Fort Worth 1953, writ ref'd n. r. e.). However, if the agreement of the bank is to be implied by its acceptance of a deposit accompanied by written limitations imposed by the depositor, the writing should set forth clearly what the bank is required to do. *Citizens National Bank of Dallas v. Hill*, 505 S.W.2d 246 (Tex.1974).

■ In the instant case, it is without dispute that Citizens accepted Cinco's funds and disbursed the same to Bergman and Goodgame. Therefore, Citizens will be held to have impliedly consented to Cinco's proposal as set forth in American's letter of November 23, 1973. Thus, the rights, duties and obligations of the parties are made to turn upon what was intended by American's letter of November 23, 1973. The question of whether the letter was insufficient to create a duty on the part of Citizens, or if it did, whether Citizens discharged its duty, as it contends, will depend upon the interpretation to be accorded the agreement. As we construe it, American's letter is subject to more than one interpretation. For instance, the letter could be interpreted as meaning that the $30,000.00 delivered to Citizens amounted to a conditional payment, conditioned on Goodgame's and Bergman's furnishing evidence satisfactory to Cinco that the lease amendments had been accepted by the lessor, and meant that Citizens was not to disburse the funds until that contingency occurred. Additionally it could be interpreted as meaning that Cinco was simply attempting to reserve the right to have the $30,000.00 returned to it should it never receive satisfactory evidence that the amendments had been accepted by the lessor, rather than actually instructing Citizens not to pay out the $30,000.00 to Bergman until the stated contingency occurred. On the other hand, since American's letter recited that it was in payment of the draft and did not specifically say that Citizens was not to disburse the funds until Cinco notified Citizens that it had received satisfactory evidence that the lessors had assented to the lease amendments, the letter could be construed to mean that while Cinco still expected Bergman and Goodgame to fulfill their obligation, Cinco did not intend that failure to perform this obligation would prevent consummation of the contract. Further, under any construction, American's letter does not make it clear as to whether Citizens or Cinco was to be the final arbiter of whether there was satisfactory proof that the lessor had assented to the lease amendments. Consequently, we think the letter of November 23, 1973, made the basis of the agreement between Citizens and Cinco is ambiguous.

■■ It is true that the interpretation of a written instrument is a question of law for the court to determine. *City of Pinehurst v. Spooner Add'n Water Co.*, 432 S.W.2d 515 (Tex.1968); *Pletz v. Christian Herald Association*, 486 F.2d 94 (5th Cir. 1973). The court, however, may, upon examining the writing, conclude that it is ambiguous and thus allow parol evidence in order to determine the underlying intent of the parties. *Trinity Universal Ins. Co. v. Ponsford Bros.*, 423 S.W.2d 571 (Tex.1968). Ambiguous intent is a fact issue which must be determined by the trier of the fact. *Skelly Oil Co. v. Ancher*, 163 Tex. 336, 356 S.W.2d 774 (1962); *Ellisor v. Kennedy*, 128 S.W.2d 842, 844 (Tex.Civ.App.—Galveston 1939, writ ref'd). The record shows that

both sides considered the agreement ambiguous in that Cinco interprets it as imposing a duty on Citizens while Citizens denies that the writing created any duty on it.

■ In a summary judgment proceeding the rule is that where there is a question relating to the true meaning of an ambiguous writing, summary judgment is improper. *Martin v. First State Bank*, Memphis, 490 S.W.2d 208 (Tex.Civ.App.—Amarillo 1973, no writ); *Robert v. E. C. Milstead Ranching, Inc.*, 469 S.W.2d 429 (Tex.Civ. App.—Beaumont 1971, writ ref'd n. r. e.); *Chapa v. Benavides Mill & Gin Co.*, 420 S.W.2d 464 (Tex.Civ.App.—San Antonio 1967, writ ref'd n. r. e.); *Tinnin v. Crook*, 333 S.W.2d 617 (Tex.Civ.App.—El Paso 1960, writ ref'd n. r. e.).

■ A summary judgment may be granted and if granted should be affirmed only if the summary judgment record establishes a right thereto as a matter of law. *Gibbs v. General Motors Corporation*, supra. The burden of establishing the absence of a genuine issue of material fact is on the movant. *Womack v. Allstate Ins. Co.*, 156 Tex. 467, 296 S.W.2d 233 (1956); *Brooks v. Hale*, 457 S.W.2d 159 (Tex.Civ.App.—Tyler 1970, writ ref'd n. r. e.). In the instant case, the summary judgment proof offered by Citizens fails to establish conclusively what the parties intended by their writing and therefore a summary judgment cannot be sustained.

Citizens argues that the judgment may be sustained on the theory that Citizens was precluded from acting as a dual agent for both Cinco and Citizens. Consequently, Citizens takes the position that its only duty was to Goodgame and Bergman and that its agreement, if any, to act as Cinco's agent was void per se and therefore it owed no duty to Cinco. We are not in accord with this proposition.

■ There is nothing in the Texas Business and Commerce Code prohibiting a collecting bank from acting both as the agent of the drawer and the drawee. The general rule at common law is that an agent cannot act as such for both parties to the same transaction where their interests are adverse or conflicting. *Cunningham v. Price*, 253 S.W. 337 (Tex.Civ.App.—San Antonio 1923, writ dism'd); 3 C.J.S. Agency § 277, p. 49. This rule, however, does not enable a party who has agreed to act as agent for both parties to shield himself from liability to one of his principals by setting up his agency for the other, for, having assumed to act as a dual agent he owes both the same duty of care, loyalty and diligence. 3 C.J.S. Agency § 277, p. 52; *Hampton Roads Carriers v. Boston Insurance Co.*, 150 F.Supp. 338, 342, 343 (D.Md. 1957). The defense of dual agency is available only by a principal who has been injured as a result of the dual agency.

Cinco urges by its second point that the trial court erred in refusing to grant its motion for summary judgment. We do not agree.

In view of the unresolved material fact issue as to the intent of the parties, neither party is entitled to a summary judgment.

Accordingly, the judgment is reversed and the cause is remanded for trial on the merits.

McKAY, J., not participating.

