**Mason R. DIXON et ux., Appellants,**

v.

**Donna SHIRLEY, Individually, et al., Appellees.**

No. 1217.

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 10, 1977.

Rehearing Denied Dec. 8, 1977.

Richard J. Hatch, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellants.

Lev Hunt, Kleberg, Mobley, Lockett & Weil, Stonewall Van Wie, III, Corpus Christi, John A. Waller, Austin, for appellees.

## OPINION

NYE, Chief Justice.

This is a summary judgment case. Appellants, Mason Dixon and his wife, brought

suit against: Donna Shirley, individually and d/b/a Donna Shirley Realty Company; Glenn Morgan, a real estate agent; and Willard Cobb and his wife, as landowners, for fraudulent misrepresentation as to the amount of land owned by the Cobbs and purchased by the Dixons. In addition, the Dixons sued the U. S. Life Title Company, who issued the title policy on the land, for negligence in failing to notify them of the alleged discrepancies between the amount of land described in the real estate contract and the title policy and deed. All the defendants filed motions for summary judgment which were granted by the trial court. The Dixons have perfected their appeal to this Court.[1]

According to the summary judgment evidence, in February of 1973, Willard Cobb, the landowner, entered into a listing agreement with Holiday Realtors (which subsequently become Donna Shirley Realty Company) to list for sale certain real property owned by the Cobbs. The listing agreement described the property as: "Addition Flour Bluff Estates #1, lot 2, 3, N 30' of 4, and 16, Block E." The listing price was $35,500.00. The listing agent was Glenn Morgan. Dixon was a homebuilder in the Flour Bluff area. He was searching for some property in this particular area upon which to construct some "mini-storage" units. Upon seeing the "For Sale" sign, which was erected on the south one-half of lot 16 of the above mentioned property, Dixon made immediate inquiry with the real estate company. Dixon contacted Morgan, the real estate agent, who represented to him that the property in question included all of lots 2, 3 and 16 and the north 30 feet of lot 4. Morgan furnished Dixon a map which also outlined the property that was offered for sale exactly as represented by Morgan. All of this culminated in a real estate contract of sale (hereinafter called the "contract") between the Dixons and the Cobbs. The contract described the property the same as it was in the listing agreement.

After the parties had executed the contract, the Dixons made arrangements with a savings and loan company to borrow $105,000.00 to build the "mini-storage" buildings. In the meantime, the contract was presented to the title company which prepared or caused to be prepared a deed and title policy covering only the north 30 feet of lot 16 instead of all of lot 16. At the time the parties met at the title company to close the sale, the Dixons signed the necessary documents without reading them fully. The Dixons alleged, and the summary judgment shows, that they presented themselves to the title company and executed all the papers represented by the title company as necessary for the closing of the transaction pursuant to the terms of the contract. The Dixons stated that they were told by the agents of the title company that the papers were drawn in accordance with the terms of the written contract.

The Dixons then began clearing and leveling the land for construction. About two weeks later, after the clearing had been completed, the Dixons were informed by a Mr. and Mrs. Robert Welch that they owned the southern portion of lot 16. Dixon immediately called Donna Shirley of the real estate firm informing her of the allegations made by Welch. Shirley advised Dixon that Welch was mistaken, that all of the property in lot 16 was included in the transaction and that the title policy would clearly reflect the same. Shirley suggested that Dixon check his title policy, which he did, and discovered that the southern portion of lot 16 was not covered in the policy. This reduced the size of the Dixons' purchase by about 20,000 square feet or 29% of the total purchase. The appellants immediately brought suit against these appellees.

There are two main questions presented by this appeal. The first is whether or not there is a fact issue as to the alleged mis-

1. This is the second time that this case has been before this Court. In *Dixon v. Shirley*, 531 S.W.2d 386 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.) we held that a previously granted summary judgment in this cause failed to dispose of all the parties and was therefore interlocutory and not appealable. This infirmity has been corrected in the case at bar.

representation of Donna Shirley, Glenn Morgan and Mr. and Mrs. Cobb. The second is whether a title insurance company cannot be held liable for its negligence in closing a real estate transaction as a matter of law.

■ In passing it should be noted that the Dixons complain of the action of the trial court in granting all of the appellees' motions for summary judgment based on the failure of Dixons to plead a cause of action. We agree, if applicable, that such action by a trial court would be error. In *Texas Department of Corrections v. Herring*, 513 S.W.2d 6 (Tex.Sup.1974) it was held to be error to grant a motion for summary judgment for failure to plead a cause of action without first providing the plaintiff with an opportunity to amend his pleadings. However, all of the appellees' motions for summary judgment state alternative grounds for summary judgment. The judgment itself does not state any specific grounds for the granting of the motions.

■ Clearly a fact question exists as to exactly how much land the Dixons bought from the Cobbs. The real estate contract used by the parties prior to closing and offered as summary judgment evidence contain the following description" "Lots 2, 3, N. 30′ of 4 and 16, Block E, Flour Bluff Estates # 1." This description is at best ambiguous, in that it could mean either the north 30′ of lot 4 alone, or the north 30′ of lot 4 and the north 30′ of lot 16. This ambiguity by itself creates a material fact issue as to what the Cobbs, Shirley and Morgan intended to convey or sell to the Dixons and what the Dixons intended to purchase. Where there is a question relating to the true meaning of an ambiguous instrument, a summary judgment is improper. *Chapa v. Benavides Mill & Gin Company*, 420 S.W.2d 464 (Tex.Civ.App.—San Antonio 1967, writ ref'd n. r. e.). The granting of the motions for summary judgment for Donna Shirley, Glenn Morgan and the Cobbs was improper and that portion of the judgment must be reversed and the cause remanded for trial.

Additionally, a genuine fact issue exists as to whether or not a false or misleading statement was made by the Cobbs, Shirley and/or Morgan to the Dixons. In their depositions, both Morgan and Shirley claim they did not mislead or misrepresent any fact to the Dixons as to the amount of land involved. To the contrary, Dixon, in his deposition, states that the Cobbs, Shirley and Morgan all told him that he was purchasing all of lot 16 in addition to the other property. The evidence showed that the real estate company erected the "For Sale" sign on the southern half of lot 16 (the very property belonging to the Welchs). In addition, the real estate agent furnished the Dixons a map which showed all of lots 2, 3 and 16 and only the north half of lot 4 as being the subject property. The landowners executed the contract and listing agreement which described the property as all of lot 16 according to the appellants, even though the deed, which the landowners signed, described only the north one-half of lot 16.

The Dixons have plead and there is some summary judgment evidence as to each element of fraud, i. e.: a false, material representation; that the speaker knew or should have known it to be false; that it was made with the intent it be acted upon; and it was relied on by the complaining party; thereby causing injury. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183 (Tex.Sup.1977).

■ The well-established rule is that a summary judgment should be granted only if the summary judgment record establishes a right thereto as a matter of law. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.Sup.1970). This right has not been established in this case. In summary judgment cases, we must accept as true all of the evidence of the parties opposing the motion for summary judgment which tends to support such party's contentions. Rule 166-A, T.R.C.P. If we accept as true Mason Dixon's deposition testimony, as we must herein, we find material fact issues of fraud as to Shirley, Morgan and the Cobbs which was relied on by the Dixons to their damage. Appellants' points one, two and three are sustained.

The remaining question to be decided is whether a title company can be liable for its negligence in closing a real estate transaction. Appellee title company contends that it issued a policy of title insurance on that part of lot 16 that belonged to the sellers, Cobbs. In doing so, it allegedly fulfilled its only duty; therefore, as a matter of law, it is not liable to the Dixons. We do not agree.

We believe it is necessary to again set forth some of the familiar rules relating to summary judgments. The burden of proof is on the movant and all doubts as to the existence of a genuine issue of material fact are resolved against him. All conflicts in the evidence are disregarded and the evidence which tends to support the position of the party opposing the motion is taken as true and such evidence is viewed in the light most favorable to the party opposing the motion. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.*, 391 S.W.2d 41 (Tex.Sup.1965). With these guidelines we review the summary judgment evidence.

The appellants alleged that the contract which was delivered to the title company required the sellers, Mr. and Mrs. Cobb, to furnish them with a title policy to be issued by the title company, in the usual and customary form, showing good title to all of lot 16. In addition, appellants alleged that the title company advised them that the purchase and sale were ready for closing and that they should present themselves to the title company for the closing of the transaction. The contract provided that the landowners agreed "upon approval" of title insurance by the title company to deliver a general warranty deed drawn in accordance with the provisions of the contract. The Dixons did not read the instruments that were presented to them for signing but were assured by the agents of the title company that the papers that were drawn, were drawn in accordance with the terms of the contract.

The evidence shows that as a matter of fact the deed and the title policy were not drawn in accordance with the contract between the parties. The title company discovered, in the process of title examination, that the landowners owned the north one-half of lot 16, but they did not own all of lot 16 nor did they own only the north 30 feet of lot 16, which would be the only two interpretations of the ambiguous language of the contract. So the title company prepared the deed or had an attorney prepare a deed in accordance with their instructions covering the north half of lot 16. The title company did not advise the landowners or the purchasers that their policy was not in conformity with either interpretations of the contract, or that the title policy actually covered only what the title company found to be the true title in the landowners. The landowners, as well as the purchasers, the Dixons, contended in effect that the title company's failure to advise the parties of these facts constituted acts of negligence which proximately caused the damages to the Dixons. If the title company had made inquiry of the landowners or had advised either party prior to closing, the parties could have acted to obtain rescission of the contract based on either mutual mistake or unilateral mistake, and therefore the present damages would not have been suffered by the Dixons.

We recognize that it has been held generally that a title insurance company has no duty to examine title and to apprise the insured of any defects found therein. *Prendergast v. Southern Title Guaranty Company*, 454 S.W.2d 803 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.); *Wolff v. Commercial Standard Insurance Company*, 345 S.W.2d 565 (Tex.Civ.App.—Houston 1961, writ ref'd n. r. e.). However, it was held in *Hexter Title & Abstract Co. v. Grievance Committee*, 142 Tex. 506, 179 S.W.2d 946, 952 (1944) that:

"It is not the business of the title insurance company to create a good title in an applicant for insurance by preparing the necessary conveyances, nor to cure defects in an existing title by securing releases or prosecuting suits to remove clouds from title, merely for the purpose of putting the title in condition to be insured. *The title company must accept*

the title and insure it as it is, or reject it. It may examine the title, point out the defects, and specify the requirements necessary to meet its demands, but it is the business of the applicant for the insurance to cure the defects." (emphasis added)

The title company in this case did not point out the defects. It did not insure the title called for in the contract as it was described, nor did the title company reject it. The contract called for the title company to issue a title policy for all of lot 16. This it did not do. The essence of the Dixon's suit was recovery from the title company for its alleged negligence in failing to apprise them of the difference of the land described in the real estate contract and the land insured by the title company.

When the title company discovered that the Cobbs owned only one-half of lot 16 and that this ownership did not coincide with the contract between the parties, the company had the duty to notify the parties that they could not insure the property described in the contract and/or that they were rejecting it for this reason. Instead, the title company prepared or caused to be prepared a warranty deed for property not called for in the contract and then prepared and issued a title policy on a "new contract" and did not inform the parties of this action. Additionally, the title company's employees told the appellants that the title policy conformed with the contract. If such summary judgment facts were found to be true in a trial on the merits, the title company would be responsible, at least in part, for the damages caused the Dixons.

 A title company cannot close its eyes to known irregularities or discrepancies between its title policy and the order for the title policy (which in this case was a real estate contract). The title company cannot intentionally or negligently permit parties to a contract to close a real estate transaction at its place of business, at its invitation, knowing all along that the contract for sale called for different property than that set forth in its policy which it issued without full disclosure. The title

company invited the parties to close the transaction at its office. Its agents assured the Dixons that the instrument prepared and the title of insurance covered the subject contract. The entire problem of the Dixons' damages would have been avoided by the title company speaking at a time when its duty to speak was clear. We hold that this summary judgment evidence raises issues of fact that must be tried by the trier of facts.

We have carefully reviewed all of the title company's cases cited to us. Each authority for "the no duty contentions of the title company" is clearly distinguishable by the facts in each such case. U. S. Life Title had the burden of establishing that no material fact issue existed and that they were entitled to judgment as a matter of law. This they did not do. *Mitchell v. Baker Hotel of Dallas, Inc.*, 528 S.W.2d 577 (Tex.Sup.1975); *Swilley v. Hughes*, 488 S.W.2d 64 (Tex.Sup.1972). The granting of the summary judgment in favor of U. S. Life Title was error. Appellants' fourth point of error is sustained. The judgment of the trial court is reversed and the cause is remanded for trial on the merits.

REVERSED and REMANDED.