Mel ZIMMERMAN, Sharon Zimmerman, Jeffrey Glover and Johanna Glover, Appellants,

v.

FIRST AMERICAN TITLE INSURANCE COMPANY, Appellee.

No. 12–88–00331–CV.

Court of Appeals of Texas, Tyler.

Feb. 28, 1990.

Rehearing Denied June 21, 1990.

James S. Robertson, Jr., Wilson, Miller, Spivey, Sheehy & Knowles, Tyler, for appellants.

Steven M. Dowd, Lufkin, for appellee.

BILL BASS, Justice.

This is an action brought by a real estate agent against a title insurance company for the title company's breach of the Deceptive Trade Practices Act "breach of contractual and fiduciary duty," and negligence in the closing of a real estate sale. At the close of the evidence, the trial court withdrew the case from the jury and rendered judgment that appellants take nothing against First American Title Company, appellee. We reverse the trial court's judgment and remand the cause for a new trial.

Appellant Zimmerman was the real estate agent who arranged a sale of forty-eight lots on Lake Palestine from the First City Bank of Dallas, seller, to Ken Torres, buyer. The parties agreed that, in lieu of a cash commission, Zimmerman would receive one of the lots, the June 19, 1981, purchase contract reciting "[b]uyer to deed lot # 80 of Unit 1 Hide A Way Bay over to Mel & Sharon Zimmerman free and clear on date of closing."

Zimmerman referred the contract to Tyler Land and Title Company, appellee's predecessor. The land purchase contract specified a purchase price of $30,000, $500 cash as earnest money and the $29,500 balance payable in cash at closing. The Lindale State Bank loaned Torres the money, and informed the title company that the payment of Torres' note to them should be secured by a deed of trust covering the forty-eight lots, and the reservation in the deed from First City to Torres of a vendor's lien and superior title in the Lindale Bank. The title company closed the transaction and issued title policies insuring Torres' title and the interest of the mortgagee, Lindale State Bank. All forty-eight lots were conveyed by deed dated February 10, 1982, and recorded March 8, 1982, from the First City Bank of Dallas, seller, to Ken Torres, buyer. This conveyance reserved a vendor's lien and superior title to secure the payment of Torres' note to the Lindale State Bank. The note was also secured by a deed of trust covering all forty-eight lots. As part of the closing, which the appellee title company handled, Ken Torres conveyed lot 80 to Mel and Sharon Zimmerman by warranty deed dated February 16, 1982, and also recorded March 8, 1982. Therefore, the Zimmermans failed to receive lot 80 "free and clear" as required by the contract, but instead received lot 80 subject to the Lindale Bank's lien and deed of trust only just created in favor of the Lindale Bank. Torres defaulted in the payment of the note to the Lindale Bank and the bank foreclosed its lien on February 7, 1984, by a sale of all the lots, including lot 80 under the deed of trust to Larry S. Watkins, the buyer at the deed of trust sale. Watkins then executed a deed of trust to secure a loan from the American National Bank.

The Zimmermans had in the meantime contracted to sell lot 80 to the Glovers by contract for deed dated April 16, 1985. Mr. Glover is Mrs. Zimmerman's son. The Glovers built a house on the lot.

Zimmerman testified that they did not discover that there was a question about their title to lot 80 until sometime in 1985 when they failed to receive a tax statement. Zimmerman then approached the title company about the problem and was assured that the matter would be corrected. The local manager submitted the Zimmermans' claim to their claim department who apparently authorized the payment of $1,395.83 to Larry Watkins, trustee, in consideration of his execution of a quitclaim deed to the Zimmermans. Shortly thereafter the Zimmermans received the quitclaim deed and assumed that they at last had an unencumbered fee simple title to lot 80. However, the title company had failed to secure a release of American National Bank's lien given by Watkins a month after Lindale Bank's foreclosure of its lien.

Watkins in turn defaulted in the payment of his note, and American National Bank also foreclosed its lien by deed of trust sale July 14, 1986.

The Zimmermans filed their original petition against the title company on October 30, 1986, for damages resulting from the title company's negligence in failing to close the sale from First City Bank of Dallas to Ken Torres so that the Zimmermans received lot 80 "free and clear" as required by the purchase contract and for their negligent failure to secure a release from American National Bank when it assured the Zimmermans that their initial title problem would be corrected. The Zimmermans also alleged that the title company's acts constituted a breach of the Texas Deceptive Trade Practices Act.

At the close of the evidence the title company moved for directed verdict on three grounds. First, the title company argued that it owed no duty to the Zimmermans. Second, the title company contended that the evidence conclusively demonstrated that the Zimmermans had elected to accept their deed to lot 80 encumbered by the lien to the Lindale Bank and had proceeded against their grantor, Torres, and others seeking title, removal of cloud from title and reformation of the deed from First City Bank to Torres so as to vest title in themselves. In the title company's view, the Zimmermans had thus waived their right to recover from the title company. Third, the title company urged the appellants' causes of action were barred by the applicable statutes of limitation.

■ The trial court granted the title company's motion for directed verdict without specifying which of the grounds alleged in the defendant's motion constituted the basis of its judgment. It is therefore the appellants' burden to show that the court's directed verdict cannot be supported on any of the grounds set forth in the title company's motion for instructed verdict. *McKelvy v. Barber*, 381 S.W.2d 59, 62 (Tex.1964).

■ The standard of review applicable to an appeal from a directed verdict requires that the evidence be viewed in the light most favorable to the appellants' position, disregarding all contrary evidence and inferences therefrom. If there is any evidence on a controlling fact about which reasonable minds could differ, the trial court's judgment must be reversed and the cause remanded for a new trial. *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649, 650 (Tex.1976).

In their first point of error the appellants urge the trial court erred in directing a verdict for the title company because the evidence shows that the title company was negligent as a matter of law, or, in the alternative, that the evidence raised an issue of fact regarding the negligence and gross negligence of the title company. The appellants contend in their second point that the facts of the case establish, or at least raise the issue of, the title company's breach of a contractual or fiduciary duty it owed the Zimmermans.

■ The title company maintains that its duty was only to carry out the terms of the contract for the buyer and seller; that Zimmerman was not a party to the agreement, but merely a real estate agent to whom it owed no duty.

We believe the title company's contention that it owed no duty to the Zimmermans is insupportable. Zimmerman was a signatory of the contract and the possessor of enforceable legal rights under it. Zimmerman had customarily done business with the title company. He brought the contract to the title company, not merely to procure title insurance for the buyer, but also that it might handle the closing in conformity with the instructions in the contract. The title company accepted the contract and assumed the responsibility to close the transaction in accordance with those instructions. The title company ordered the preparation of the necessary documents for closing and paid them from the closing proceeds. It circulated the documents with instructions for their execution, and had them recorded. It prepared the closing statements and made disbursements, including the recording and delivery of the deed to the Zimmermans for lot 80. The title company was paid a closing fee.

■ A title company may be liable for its negligence in closing a real estate transaction. *Dixon v. Shirley*, 558 S.W.2d 112

(Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Chilton v. Pioneer National Title Insurance Co.*, 554 S.W.2d 246 (Tex. Civ.App.—Waco 1977, writ ref'd n.r.e.). The title insurance agent may not intentionally or recklessly deceive the parties to a real estate transaction. *Stone v. Lawyers Title Insurance Corp.*, 537 S.W.2d 55 (Tex.Civ.App.—Corpus Christi 1976), *aff'd in part and rev'd in part*, 554 S.W.2d 183 (Tex.1977). An escrow agent is in a fiduciary relationship with the contracting parties. *Chilton*, 554 S.W.2d at 249. Among the obligations of the fiduciary are (1) the duty of the loyalty, (2) the duty to make a full disclosure, and (3) the duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it.

In the instant case, the title company twice undertook the obligation of transferring to the Zimmermans the title to lot 80 free and clear of liens, first during the original closing, and subsequently when the error was discovered. In each instance, the title company having accepted that undertaking owed the Zimmermans the duty to use care and skill to see that it was done correctly. *Id.; Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508 (Tex.1947).

The buyer, seller and Zimmerman agreed that instead of a cash commission from the seller's proceeds, Zimmerman would take as his commission one of the lots received by the buyer "free and clear of liens." The title company disregarded these instructions of the contracting parties and without disclosure to anyone created a lien on lot 80 in favor of the Lindale Bank. That was a significant alteration of an important provision of the agreement, and a breach, not only of the title company's duty to Zimmerman, but also of its duty to the buyer and seller "to exercise due care to carry out the terms of the agreement." The title company repeatedly asserts in its brief that it carried out the terms of the agreement, but the record contains ample evidence to the contrary. Some three years after closing the title company undertook to cure its first failure

to accomplish the transfer of lot 80 to the Zimmermans "free and clear." Having undertaken the task, the title company plainly owed the Zimmermans the duty of performing it with care. Yet once again they failed to secure a release of a recorded lien. The trial court's directed verdict cannot be sustained on the theory of no duty.

In their third point, the appellants contend that the trial court erred in directing a verdict for the title company because the evidence demonstrated material issues of fact as to the title company's alleged violations of the Deceptive Trade Practices Act.

The appellants maintain that the title company advised Mr. Zimmerman that since title to all the lots would be checked in connection with the sale to Torres, it was not necessary for him to order a separate policy for lot 80. The appellants urge that the evidence establishes or at the very least raises the issue that the title company's negligent handling of the closing and its failure to reveal the existence of the Lindale Bank's lien encouraged in the Zimmermans the false belief that the title to lot 80 was free and clear of liens. The title company's subsequent attempts to cure its error were, in appellants' view, reasonably calculated to falsely reassure them that their title had been cleared when the title company knew or should have known that the deed it obtained from Larry Watkins to the Zimmermans effected no such remedy. Therefore, the appellants argue, the evidence shows intentional or negligent misrepresentations by the title company and its failure to disclose material facts, conduct constituting a "false, misleading act or practice" and a breach of the DTPA. The appellants urge the evidence of the title company's conduct raises the issue of its breach of the DTPA in (1) representing that an agreement confers or involves rights and remedies that it does not have or involve, (2) representing that goods or services have sponsorship, approval, characteristics, uses, and benefits which they do not have, or (3) the failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a

transaction into which the consumer would not have entered had the information been disclosed. Tex.Bus. & Com.Code Ann. § 17.46 (Vernon 1968).

The title company's position is that "[t]he alleged violation of the ... DTPA ... is founded in contract ... and tort law and in both such instances it must be shown by Zimmerman that [the title company] owed a duty to him...." The title company argues the facts in evidence do not show the existence of such a duty. It reiterates its argument that the Zimmermans were not "parties" to the real estate sale agreement and did not purchase a separate title policy on lot 80.

The title company's argument once again ignores the fact that Mr. Zimmerman was a signatory of the contract and agreed by its terms with the other parties to acquire lot 80 "free and clear of liens" in lieu of the ordinary agent's commission. The record at least raises the issue that the title company failed to close the transaction in conformity with the agreement, misrepresenting the effect of the deed from Torres to Zimmerman and failing to disclose the existence of an outstanding lien. The evidence in the case suggests that the title company's subsequent attempt to cure its mistake involved an astonishing repetition of the same character of errors, nondisclosures and misrepresentations.

■ A person must be a consumer as that term is defined in the Act in order to maintain an action under the DTPA. *Melody Home Manufacturing Co. v. Barnes*, 741 S.W.2d 349, 351 (Tex.1987). Tex.Bus. & Com.Code § 17.45(4) (Vernon 1987) defines consumer as "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services...." Two requirements have been recognized as essential to establish consumer status. First, one must have sought or acquired goods or services by purchase or lease. Second, the goods or services purchased or leased must form the basis of the complaint. *Id.; Riverside National Bank v. Lewis*, 603 S.W.2d 169, 173–75 (Tex.1980).

■ The title company's argument suggests a misplaced reliance on defenses rooted in common-law tort and contract doctrines. The Deceptive Trade Practices Act is not a codification of the common law. *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex.1980). Claims under the DTPA are not based in negligence. D. Bragg, P. Maxwell, J. Longley, *Texas Consumer Litigation*, § 2.02 n. 90 at 34 (2d Ed.1983). Nor is there any requirement of privity between the consumer and the defendant. "The coverage of the Deceptive Trade Practice Act is not restricted to deceptive practices committed by parties furnishing goods or services, but rather extends to *any* deceptive practice made in connection with the purchase or lease of such goods or services." *Gibbs v. Main Bank of Houston*, 666 S.W.2d 554, 559 (Tex.App.—Houston [1st Dist.] 1984, no writ) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981)). In *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983), the Supreme Court reiterated the rule that the determination of a plaintiff's consumer status turns on the plaintiff's relationship to a transaction, not the plaintiff's contractual relationship with the defendant. The Supreme Court said in *Flenniken:*

> A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant. The only requirement is that the goods or services sought or acquired by the consumer form the basis of his complaint.

*Flenniken*, 661 S.W.2d at 707. Therefore, the court concluded "[i]f, in the context of a transaction in goods or services, any person engages in an unconscionable course of action which adversely affects a consumer, that person is subject to liability under the DTPA." *Id.* Moreover, there is no requirement that the defendant's deceptive or misleading conduct occurs simultaneously with the sale or lease of goods or services that form the basis of the consumer's complaint. *Cf. Leal v. Furniture Barn, Inc.*, 571 S.W.2d 864, 865 (Tex.1978); *Melody Home Manufacturing Co.*, 741 S.W.2d 349.

The appellants established their standing as consumers by the original real estate transaction in which they sought to acquire lot 80 free and clear of liens as Mr. Zimmerman's commission for brokering the sale of the other lots. There is evidence that it was in the context of that transaction that the title company engaged in the alleged deceptive and misleading practices. The trial court's directed verdict cannot be sustained upon the title company's assertion that the Zimmermans had shown no duty owing them by the title company.

In their fifth point of error, the appellants contend that the trial court erred in directing a verdict for the title company, because the doctrine of election of remedies is inapplicable to this case.

The title company maintains that the Zimmermans accepted the deed to lot 80, although the lot was subject to an outstanding lien (not shown on the deed) contrary to the instructions in the real estate purchase contract. Instead, as the title company phrases it, the Zimmermans "elected to retain title to lot 80." The title company apparently argues that the Zimmermans' initial acceptance of the deed to lot 80 and their acquiescence in the title company's efforts to cure the problem are facts which constitute a ratification of the title company's error and a waiver of the Zimmermans' right of recovery against it.

However, three years had transpired between the title company's preparation, recordation and delivery of the deed to Zimmerman, and his discovery of the title company's error. The deed did not contain any reference to the recently created lien in favor of the Lindale Bank. The Zimmermans had already lost title to the lot through the foreclosure of the Lindale Bank's lien. Mrs. Zimmerman's son was in the process of placing a home on the lot. It is difficult to see what real choice the Zimmermans possessed at that time but to accept the title company's assurance that they would correct its error by securing a conveyance, free and clear of liens, from the buyer at the deed of trust sale, Larry Watkins.

Waiver is the voluntary and intelligent relinquishment of a known right or intentional conduct inconsistent with the assertion of a known right. *Ford v. State Farm Mutual Automobile Insurance Co.*, 550 S.W.2d 663, 666 (Tex.1977); *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980). Similarly, a party does not lose a remedy by electing to pursue another unless it appears that he acted voluntarily, intentionally and with the knowledge essential to the exercise of an intelligent choice. *Bocanegra*, 605 S.W.2d at 852. When the Zimmermans received the deed from Torres after the closing they were totally ignorant of the central fact which was the genesis of all their difficulties. When they discovered their predicament and complained to the title company, the title company sent them a deed from Larry Watkins, trustee, with the assurance that their problem was solved. Once again they were left ignorant of the existence of a prior lien whose foreclosure would shortly oust them from their title. Their complaint to the title company and their acceptance of the Larry Watkins deed from the title company in supposed correction of its error cannot seriously be considered as a ratification of the original error. Repudiation at that point would have been an empty gesture. The time for repudiation of the original flawed conveyance had passed with the foreclosure of the Lindale Bank's lien while the Zimmermans were entirely unaware of its existence. The application of the doctrine of election obviously presupposes the existence of at least two inconsistent rights or remedies. In fact, the Zimmermans had no such alternatives. The title company asserts that the Zimmermans "elected to retain title to lot 80." However, the record shows that both after the initial closing and the title company's subsequent pretended correction of the problem, the Zimmermans were ignorant of the prior liens until they had lost title to their property through the foreclosure of those liens. An election simply cannot arise from these facts.

The appellants also joined in their suit against the title company, actions against American National Bank, First City National Bank of Dallas, Ken Torres and the

Lindale State Bank, pleading for various forms of relief including reformation, removal of cloud from title and for title and possession. Their suits against the American National Bank, Ken Torres and the First City National Bank of Dallas were dismissed by agreement prior to judgment. Their action against the Lindale State Bank was withdrawn from the jury at the close of the plaintiff's evidence and verdict directed for the bank.

The title company argues that by bringing the other causes seeking other inconsistent forms of relief, the appellants made an election of remedies which bars their recovery of damages from the title company.

There is no merit in the title company's contention. A party may plead and prove totally inconsistent claims and defenses in Texas. *Deal v. Madison,* 576 S.W.2d 409 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r. e.), *overruled on other grounds, Cypress Creek Utility Service Co., Inc. v. Muller,* 640 S.W.2d 860, 866; Tex.R.Civ.P. 48. The mere bringing of an action that has been dismissed before the entry of judgment is not an election of remedies barring the prosecution of another remedy. *Bocanegra,* 605 S.W.2d at 852; *Poe v. Continental Oil & Cotton Co.,* 231 S.W. 717, 719 (Tex.Comm'n App.1921, holding approved); *Bandy v. Cates,* 44 Tex.Civ.App. 38, 97 S.W. 710, 711 (1906, writ ref'd). Moreover, the pursuit of a fancied or unfounded remedy which never existed, because either the facts or the applicable law prove to be different from what the plaintiff presumed, does not prevent the plaintiff from invoking the proper remedy. *Id.* In the instant case, all of the actions against the other defendants were dismissed by agreement before judgment with the exception of the suit against the Lindale State Bank in which a verdict was directed against the appellants at the conclusion of their evidence.

The most authoritative as well as the most recent statement of Texas law pertaining to the doctrine of election is Judge Pope's opinion in *Bocanegra* wherein he distinguishes the doctrine of election from the kindred theories of judicial and equitable estoppel, waiver and ratification. The facts in *Bocanegra* illustrate the narrow application of the doctrine of election in this state. Janie Bocanegra sued Aetna to recover under a group health policy which provided coverage for medical expenses incurred in treatment of a non-occupational injury or disease. Mrs. Bocanegra had previously filed a claim with the Industrial Accident Board related to the same conditions, and had settled her claim. The court of civil appeals held the settlement was an election which barred her later suit. The supreme court discussed the difficulty doctors, lawyers and laymen have in understanding and applying the statutory distinction between "occupational disease" and "ordinary disease of life." The supreme court reversed the court of civil appeals and held that her claim and settlement of her claim for benefits for on-the-job injury was not an election barring her subsequent suit for reimbursement of non-occupational injury expenses, because it was not the product of an informed election in that she did not possess a full and clear understanding of the facts and appropriate remedies essential to the exercise of an intelligent choice.

The title company strenuously argues that this case is governed by the decision of the San Antonio Court of Civil Appeals in *Texas Reserve Life Insurance Co. v. Security Title Co.,* 352 S.W.2d 347 (Tex.Civ. App.—San Antonio 1961, writ ref'd n.r.e.). Both *Texas Reserve* and the case at bar involve a title company's negligent closing of a real estate transaction in which the title company failed to secure the release of a prior lien burdening one of the parcels in the transfer. But the analogy goes no further. In *Texas Reserve,* the plaintiff learned of the unreleased lien within days of closing. A repudiation of the instrument delivered in violation of the escrow agreement would still have been effectual to restore the status quo. Instead, four months later and with full knowledge of the facts, Texas Reserve elected to pay the indebtedness secured by the lien. It then brought a negligence action against the title company seeking damages for the

amount it was required to pay to secure title to the property free and clear of liens. The Zimmermans, on the other hand, were entirely unaware of the facts that gave them the right to repudiate until three years later after their title was extinguished by foreclosure. The restoration of the status quo was by then impossible. They were led to believe by the receipt of the second deed that the title company had rectified its error and secured their ownership of lot 80 free and clear of liens. *Texas Reserve* is not apposite. The appellants cannot be charged with having made an election of remedies under the facts of this case and the trial court's directed verdict cannot be sustained on that basis.

In their sixth and last point of error, the appellants maintain that the trial court erred in directing a verdict, because they are not barred by limitations from asserting their causes of action.

The title company contends that the Zimmermans had constructive notice of the prior lien on lot 80 from March 8, 1982, the date of filing of the Torres deed and the deed of trust in favor of the Lindale State Bank. The Zimmermans did not file their suit until October 30, 1986, more than four years after they were chargeable with notice of those instruments. Therefore, it argues, their suit against the title company was barred by the appropriate statutes of limitation, two years as to the DTPA claim (Tex.Bus. & Com.Code § 17.565 (Vernon 1987)) and four years for the appellants' other actions (Tex.Civ.Prac. & Rem.Code § 16.004 and § 16.051 (Vernon 1986)).

■■■■ A purchaser of real estate has constructive notice of all information in his grantor's chain of title, and he is bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in that chain. *Westland Oil Development Corp. v. Gulf Oil,* 637 S.W.2d 903, 908 (Tex.1982). If evidence of a fraud is a matter of public record, it is ordinarily sufficient to charge a party with knowledge of the fraud, and to start the running of the statute of limitations. *Sherman v. Sipper,* 137 Tex. 85, 152 S.W.2d 319 (1941). How-

ever, the existence of a fiduciary or special relationship of trust and confidence between the parties may excuse the injured party from making a prompt and thorough investigation of the records until the receipt of other knowledge that would reasonably arouse suspicion. *Courseview, Inc. v. Phillips Petroleum Co.,* 158 Tex. 397, 312 S.W.2d 197 (1957). Moreover, a party may be estopped to assert the defense of limitations if his statements or conduct kept the other in ignorance of his rights or induced him to refrain from bringing his action within the applicable time. *Gibbs,* 666 S.W.2d 554; *Mandola v. Mariotti,* 557 S.W.2d 350 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.); *Ladd v. Knowles,* 505 S.W.2d 662 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.); *Lanpar Company v. Stanfield,* 474 S.W.2d 753 (Tex.Civ.App.—Waco 1971, writ ref'd n.r.e.); Annotation, Fraud, Misrepresentation, or Deception as Estopping Reliance on Statute of Limitations, 43 A.L.R.3d 419 (1972). A title company acting as escrow agent is in a fiduciary relationship with the parties to the closing of a real estate transaction. *Chilton,* 554 S.W.2d 246; *City of Fort Worth v. Pippen,* 439 S.W.2d 660 (Tex.1969).

There is evidence that Zimmerman had customarily done business with the title company. He brought the real estate purchase contract to the title company for closing. He was a signatory to the contract and was by its terms to receive the grant of lot 80 "free and clear of liens." The title company conducted the closing seeing to the preparation of the instruments, their circulation with instructions for their execution, and their recording. Instead of seeing that the Zimmermans received lot 80 free and clear of liens, the title company was instrumental in the creation of a lien on lot 80 which did not exist when it received the contract and which was not mentioned in the contract. Zimmerman's suspicions were not aroused until he failed to receive a tax statement in 1985. He complained to the title company. He was told that the problem would be corrected and he was mailed a deed, accompanied by the assurance that everything

was all right. However, the title company was or should have been aware of the lien affecting the lot. The Zimmermans subsequently learned that this lien was also foreclosed by deed of trust sale on July 14, 1986. The Zimmermans filed suit October 30, 1986.

Viewing the evidence on the controlling facts most favorably to appellants' position, we conclude that there is evidence from which a jury might reasonably conclude that the title company was in a fiduciary relationship with Zimmerman; that he was therefore justified in not searching the deed records until his suspicion was reasonably aroused by his failure to receive the tax statements in 1985, and that the running of the statute was suspended in the interim. Further there is evidence from which it reasonably might be inferred that the title company's misrepresentations regarding their supposed correction of the Zimmermans' title problem were fraudulent and reasonably calculated to induce the Zimmermans to refrain from commencing their suit within the period allowed by the statute of limitations, and that consequently, the title company should be estopped to assert their limitation defense. We therefore conclude that the trial court's directed verdict cannot be sustained on the theory that their causes of action were barred by the appropriate statutes of limitation.

All of the appellant's points of error are sustained. The judgment of the trial court is reversed and the case remanded to the trial court.