## TONKA CORPORATION v. COMMISSIONER OF TAXATION.

169 N. W. (2d) 589.

July 18, 1969—No. 41512.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, *C. H. Luther,* Assistant Attorney General, and *Emmett Dowdal,* Special Assistant Attorney General, for relator.

*Robert J. Johnson, Thomas O. Moe,* and *Dorsey, Marquart, Windhorst, West & Halladay,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review an order of the Minnesota Tax Court reversing three orders of the commissioner of taxation and granting respondent's claims for refunds on its corporate income tax.

Tonka Corporation is a publicly held corporation organized under the laws of the State of Minnesota and is engaged in the manufacture and sale of toy metal vehicles. It has its principal business office in Mound, Minnesota.

Tonka filed timely Minnesota corporate income tax returns for the fiscal years ending on June 30 of 1961, 1962, and 1963. In these returns, Tonka computed its tax liability pursuant to Minn. St. 290.17(3) as if it were a corporation whose "trade or business is conducted wholly within" Minnesota. Subsequently, Tonka filed timely claims for refunds for each of these years totalling $111,236.07, alleging that during each of them it was in fact a corporation whose "trade or business is carried on partly within and partly without this state" under § 290.17(4) entitling it to apportion its income according to the formulae set out in § 290.19. On November 30, 1966, the commissioner of taxation rejected Tonka's refund claims. Tonka appealed to the Tax Court, and the claims were consolidated for trial and decision. That court found that during the fiscal years in question Tonka conducted its business "partly within and partly without the State of Minnesota" and, reversing the commissioner, granted Tonka the full refunds it requested. We granted the commissioner's petition for a writ of certiorari.

There is no dispute as to the facts. Tonka's entire manufacturing operation, with the exception of the production by several out-of-state manufacturers of rubber ties on molds designed and owned by Tonka, was, at all times relevant to this appeal, carried on in Minnesota. Tonka's vice president in charge of sales handled the sale of its products to customers in Minnesota, North

Dakota, South Dakota, and Wisconsin. Its products were sold in the remainder of the country, largely to wholesalers and large retail outlets, through sales representatives located in eight major cities,who were compensated solely on a commission basis. Each of these representatives had an exclusive territory and was forbidden by his contract with Tonka from handling any competing product lines. Each operated out of a rented office and handled noncompeting products of other manufacturers. The representatives solicited and negotiated orders, which with the exception of some orders approved in New York by Tonka's credit manager, were all sent to Tonka's office in Mound for a credit check and approval.

In addition, the representatives assisted in collection matters by following up on slow accounts in order to protect their commissions, which were lost if the customer failed to pay; arranged for pool-car shipments for customers as a means of reducing their customers' shipping costs; determined the authenticity of, and worked out adjustments for, defective merchandise claims by customers; with the exception of the Boston representative, maintained permanent displays of all Tonka's products, which were owned by Tonka, in their offices; worked with Tonka and its advertising agency in allocating television advertising time for materials owned and supplied by Tonka in more than 30 local markets; worked closely with the customers in effecting the execution of Tonka's advertising allowance contracts; and assisted in authenticating the customer advertising allowances awarded thereunder.

Tonka had a special relationship with its New York representative. Because New York, and specifically a building located at 200 Fifth Avenue, is considered the center of the toy industry, and because New York's annual toy fair attracts most of the major toy buyers of the world, it was imperative, according to Tonka, that it have strong representation there. Therefore, in 1959 Tonka encouraged its New York representative, Arthur Piser, to move into a new office in the building at 200 Fifth

Avenue, which had sufficient space for a Tonka showroom large enough for four complete permanent displays of its products and a private office for use of its officers, employees, and representatives when they came to New York. Tonka agreed to and did pay Piser $305 per month in lieu of rent for maintaining this office.

In 1960, Piser died, and Tonka actively participated in negotiations for the assignment of Piser's lease on this office by his estate to Ray Larsen, an employee of Piser's whom Tonka had selected to represent it. Larsen did not have the money to pay for such an assignment immediately, so Tonka guaranteed the payment of $9,000 to the estate by Larsen, and in return took an assignment of the lease to L. E. Baker, then Tonka's president, the lease being placed in escrow to be delivered to Baker should Larsen cease to be Tonka's representative in New York. In addition, Tonka continued to contribute $100 per month to the rent. In 1961, the New York office was remodeled to give Tonka even more space. Tonka agreed to pay one-half ($16,360) of the remodeling cost instead of continuing the monthly contributions to rent. In 1963, Tonka again decided that it needed more space, and, therefore, Larsen moved his offices up one floor. The amount realized from the sale of the original lease was applied to the remodeling of the new suite and Tonka paid the additional $55,000 required for the remodeling. Tonka's president received an assignment of this new lease, the lease again being placed in escrow in the same manner as the lease on the old office. Tonka also agreed to resume its contributions to the rent when its $55,000 payment had been amortized.

During the entire period under consideration, Tonka maintained four complete permanent displays of its products in the New York office. Tonka's name was on both the separate door to its private office and the door into Larsen's reception room. Tonka was listed in the building directory and in the telephone book. Its officers and representatives used the offices whenever they were in New York. During the annual toy fair, all of

the representatives and most of the officers spent 1 to 4 weeks in New York meeting with customers and potential customers at this office. About 15 percent of Tonka's annual sales orders were placed during the toy fair and 50 percent of these were approved and accepted in New York by Tonka's credit manager. Larsen, in addition to all his duties as a sales representative, worked closely with various national consumer catalogue publishers, encouraging them to include as many of Tonka's products in their catalogues as possible.

The Tax Court concluded that this evidence, at least with respect to the New York office, compelled a finding that Tonka was carrying on a business partly without the state. Since the state had stipulated that "[i]f the Tax Court determines that during any of the three (3) fiscal years involved in this matter Appellant carried on a trade or business partly within and partly without the State of Minnesota," all sales by any of Tonka's sales representatives would be treated as non-Minnesota sales for purposes of computing Tonka's taxable income under the § 290.19 formula, the Tax Court allowed the entire refunds claimed.

The only issue before us on appeal is whether the evidence supports the Tax Court's finding that Tonka's sales activities in its New York office or through its New York representative amounted to carrying on a business partly without the State of Minnesota. This is solely a question of fact. Consequently, the function of this court is to determine whether there was reasonable evidence to sustain the findings. Unless the Tax Court's action was arbitrary, oppressive, or unreasonable, this court may not substitute its judgment for that of the Tax Court. Great Northern Investments, Inc. v. Commr. of Taxation, 267 Minn. 447, 127 N. W. (2d) 444. Ordinarily, a manufacturer is not deemed to be carrying on a business outside the state if it sells its products in other states through completely independent contractors who solicit orders for approval at the manufacturer's home office, deal in other similar products, maintain their own

sales offices, and utilize sales methods which are not subject to the manufacturer's control. See, Irvine Co. v. McColgan, 26 Cal. (2d) 160, 157 P. (2d) 847, 167 A. L. R. 934; W. J. Dickey & Sons, Inc. v. State Tax Comm. 212 Md. 607, 131 A. (2d) 277. On the other hand, if it has employees in these other states who make actual, final sales there, handle no other similar products, perform customer services, operate out of branch offices provided by the manufacturer, and are controlled by its sales policies, the manufacturer is clearly carrying on a business in these states. See, Hans Rees' Sons v. North Carolina, 283 U. S. 123, 51 S. Ct. 385, 75 L. ed. 879. See, also, W. J. Dickey & Sons, Inc. v. State Tax Comm. *supra.* This case falls somewhere between these two extremes.

It is undisputed that between 5 and 7 1/2 percent of Tonka's annual sales were made and approved at its New York office during the annual toy fair. This fact alone might well have justified the Tax Court's finding that Tonka carried on part of its business outside this state.

In addition, the Tax Court pointed out that all of the sales by Tonka's New York representative would be classified as sales made without the state for purposes of apportioning its income under § 290.19, subd. 1(4), which defines such sales as—

"* * * sales negotiated or effected in behalf of the taxpayer by agents or agencies chiefly situated at, [connected] with, or sent out from premises for the transaction of business owned or rented by the taxpayer or by his agents or agencies outside the state * * *."

Therefore, the Tax Court found, Tonka's income should have been apportioned. The state, however, contends that this definition cannot be applied unless it has first been determined, without reference to the provisions of § 290.19, that the taxpayer's business was "carried on partly within and partly without the state." The state also contends that even if the § 290.19, subd. 1(4), definition could be utilized to determine whether a corpora-

tion is carrying on a business without the state, it does not, by its terms, apply in this case because Tonka's New York representative was not Tonka's agent.

We agree with the state's contention that the definition contained in the § 290.19 apportionment formula is not *controlling* upon a determination as to whether a taxpayer is carrying on a business partly without the state. However, reading c. 290 as a single statute, the provisions of § 290.19 are *instructive* as to the intent of the legislature. They set out in precise terms the kinds of income which the legislature felt should or should not be attributed to Minnesota.

It is clear that if the Tax Court was correct in classifying Tonka's New York representative as Tonka's agent, the sales made by it fit within the definition in § 290.19, subd. 1(4), of sales made without the state. The legislature has indicated that the income from such sales should not be attributed to Minnesota.

The existence of an agency relationship is solely a question of fact. Agency has been defined as the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act. Restatement, Agency (2d) § 1. While Tonka's New York representative had many of the attributes which characterize an independent contractor, he could not deal in competing products; he performed a great many customer services; he aided Tonka in setting up its advertising program; Tonka, in effect, paid a large portion of his rental expense for office space; and his offices were used by Tonka as its New York sales headquarters during the annual toy fair. This evidence indicates that the Tax Court was not unreasonable in concluding that Tonka's relationship with its New York representative was such that he could be fairly characterized as Tonka's agent or employee, and that sales made through him amounted to business carried on without this state. We agree with the Tax Court that if Tonka "had rented offices in other states and hired men on a salary or on a commission basis to

operate from those offices, it would clearly be entitled to allocate its income under the statute." We, too, see little practical difference "between that arrangement and the arrangement in the instant case." In The Maytag Co. v. Commr. of Taxation, 218 Minn. 460, 17 N. W. (2d) 37, we held that the income of the taxpayer from out-of-state orders made through its regional branch sales office in Minnesota, but approved at its home office outside the state, from which its merchandise was shipped, was taxable by Minnesota. Thus, we held that the taxpayer was carrying on a business partly within Minnesota. The Maytag case is, in a sense, the converse of the instant case. It, therefore, would be anomalous for us to hold in this case that Tonka was not carrying on a business partly within New York. The state, however, points out that Congress has enacted P. L. 86-272, 73 Stat. 555, 15 USCA, § 381, et seq., which forbids a state to tax the income of a corporation which engages only in certain business activities within that state. Subsections (c) and (d) of § 381 provide:

"(c) For purposes of subsection (a) of this section, a person shall not be considered to have engaged in business activities within a State during any taxable year merely by reason of sales in such State, or the solicitation of orders for sales in such State, of tangible personal property on behalf of such person by one or more independent contractors, or by reason of the maintenance, of an office in such State by one or more independent contractors whose activities on behalf of such person in such State consist solely of making sales, or soliciting orders for sales, of tangible personal property.

"(d) For purposes of this section—

"(1) the term 'independent contractor' means a commission agent, broker, or other independent contractor who is engaged in selling, or soliciting orders for the sale of, tangible personal property for more than one principal and who holds himself out as such in the regular course of his business activities; and

"(2) the term 'representative' does not include an independent contractor."

Since all of the agreements between Tonka and its sales representatives refer to the latter as independent contractors, the state argues that sales by and through them do not constitute engaging in a business within New York under P. L. 86-272. Therefore, the state contends, making such sales cannot be categorized as carrying on a trade or business outside of Minnesota.

However, we have already pointed out that the evidence amply supports a finding that at least Tonka's New York sales representative was more like an employee than an independent contractor. Therefore, subsections (c) and (d) of § 381 would be inapplicable. In addition, since P. L. 86-272 was not enacted until 22 years after Minn. St. 290.17(4) was adopted in its present form, it is not very persuasive authority for determining what our legislature intended § 290.17(4) to mean.

Therefore, we hold that the evidence concerning the peculiar relationship between Tonka and its New York representative amply supports the Tax Court's determination that during the relevant years Tonka was carrying on a business partly within and partly without this state. While the evidence is much weaker with respect to Tonka's other sales representatives, the stipulation by the parties that, if the Tax Court found that during any of the 3 fiscal years involved in this matter Tonka carried on a trade or business partly within and partly without the State of Minnesota, it would be entitled to apportion all of its income resulting from sales by its sales representatives according to the formulae provided in § 290.19, compels us to conclude that Tonka is entitled to the full refund claimed.

Affirmed.