E. F. JOHNSON COMPANY v.
COMMISSIONER OF TAXATION.*

224 N. W. 2d 150.

November 29, 1974—No. 44675.

---

*Appeal dismissed, 421 U. S. 982, 95 S. Ct. 1985, 44 L. ed. 2d 474 (1975).

*Warren Spannaus,* Attorney General, and *C. H. Luther,* Deputy Attorney General, for appellant.

*Dorsey, Marquart, Windhorst, West & Halladay, Robert J. Johnson, John W. Windhorst, Jr.,* and *Nicky R. Hay,* for respondent.

Heard before Sheran, C. J., and Rogosheske, Peterson, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal by defendant commissioner of taxation from an order of the Waseca County District Court. Plaintiff, E. F. Johnson Company, is a Minnesota corporation with its only business office and place of manufacture in Waseca, Minnesota. For the period from 1961-1963, plaintiff assigned all of its income to the state of Minnesota. In 1965, it filed claims for refunds for those years on the basis that since it had carried on its business within and without Minnesota, it was entitled to apportion its net income under Minn. St. 290.17(4) and 290.19. The commissioner of taxation denied these refund claims and plaintiff commenced these consolidated actions. The trial court held that plaintiff had carried on its business within and without Minne-

sota, was entitled to apportion, and ordered judgment for plaintiff. The commissioner of taxation seeks review of that determination. We reverse.

The issue is whether or not, under Minn. St. 290.17, this Minnesota corporation is "carrying on" a business within another state for tax purposes.

Minn. St. 290.17, provides in part as follows:

"Items of gross income shall be assigned to this state or other states or countries in accordance with the following principles:

\* \* \* \* \*

"(3) Income derived from carrying on a trade or business \* \* \* shall be assigned to this state if the trade or business is conducted wholly within this state. \* \* \*

"(4) When a trade or business is carried on partly within and partly without this state, the entire income derived from such trade or business \* \* \* shall be governed \* \* \* by the provisions of section 290.19 \* \* \*."[1]

The facts are not in dispute as appellant has adopted the amended findings of fact of the district court and respondent has adopted the statements of facts made by appellant in his brief, with certain explanatory additions. Therefore, the facts as accepted for this decision are as follows:

"1. The Plaintiff is a Minnesota corporation. During the fiscal years 1961, 1962 and 1963 (the subject years in question), the Plaintiff maintained its only business office and place of

---

[1] Amended, to take effect for all taxable years after December 31, 1973, by L. 1973, c. 650, Art. VII, § 1, which added the following sentence to Minn. St. 290.17(4): "For the purposes of this clause, a trade or business located in Minnesota is carried on partly within and partly without this state if tangible personal property is sold by such trade or business and delivered or shipped to a purchaser located outside the state of Minnesota."

Minn. St. 290.19 provides the methods of computation for the allowance of apportionment of the income to this state by use of the three-factor approach.

manufacture at Waseca, Minnesota, but its products were sold throughout the United States and Canada. The Plaintiff was not qualified to do business in any other state and did not file income tax returns in any state other than Minnesota for the subject years.

"2. During the years in question, the Plaintiff's principal business consisted of the manufacture and sale of various electronic equipment.

"3. For the calendar years of 1961, 1962 and 1963, the Plaintiff filed timely corporation income tax returns with the Commissioner of Taxation of the State of Minnesota and, in said returns, assigned one hundred percent (100%) of its income to the State of Minnesota.

"4. Along with employing salesmen in Minnesota during the years in question, the Plaintiff conducted most of its sales activity through sales representatives in various parts of the United States. According to the Plaintiff's calculation, the sales activities of these sales representatives accounted for approximately ninety-four percent (94%) of the sales by the Plaintiff during the subject years.

"5. The Plaintiff's agreements with the sales representatives were oral. Under these oral agreements, each representative held an exclusive and nonassignable right to sell Plaintiff's products in a specified geographical area. The representatives were not permitted to sell or solicit orders for products competitive with those of the Plaintiff, but they were permitted to and did engage in the sale of products which did not compete with those of the Plaintiff. The sales representatives were compensated by commissions equal to specified percentages of sales. Each representative operated from an office located outside Minnesota which it owned or leased and maintained at its own expense.

"6. The sales representatives solicited orders which were forwarded to the Plaintiff's main office at Waseca, Minnesota, for acceptance or rejection.

"7. Plaintiff's representatives, in addition to solicitation of sales, engaged in other activities, such as:

"a. Assisting customers in the preparation of specifications for custom-made components which were within the Plaintiff's manufacturing capabilities and met the needs of the customer;

"b. In rare cases involving an extremely competitive situation, negotiating prices for a custom product within limits set by the Plaintiff;

"c. Making a preliminary credit check and recommendation to the Plaintiff on a prospective customer's credit rating;

"d. Aiding in the collection of delinquent accounts;

"e. Handling customer complaints by either making the necessary repairs themselves, taking the product to a third party for repairs, or returning defective merchandise to the factory for repair or replacement;

"f. Leveling inventories between various distributors in a given area, and aiding in adjusting accounts in such a transaction;

"g. Representing the Plaintiff at various trade shows, or cooperating with Plaintiff's employees in handling booths at trade shows, including receiving and accepting orders at these shows;

"h. Attending sales meetings which were required by the Plaintiff;

"i. Giving Plaintiff advice on marketing and sales programs;

"j. Acceding to Plaintiff's requests for staff improvements;

"k. Suggesting technical improvements of Plaintiff's products;

"l. Reporting to the Plaintiff on substantial calls made by the sales representatives, and submitting reports to the Plaintiff on sales and inventories, all submitted on Plaintiff's forms; and

"m. Arranging catalog listings of Plaintiff's products, including allocating Plaintiff's funds and coordinating the advertising layout with Plaintiff's advertising department.

"8. The Plaintiff owned property consisting of tools and dies in the plants of various suppliers, samples and demonstration

sets, sales literature used by the sales representatives, all of which property was located outside the State of Minnesota.

"9. During the last two months of 1962 and all of 1963, Plaintiff engaged Nelson Berman to undertake certain electronic-component research and product-development work carried on in rented premises in New York. Plaintiff reimbursed Berman for all expenses and paid him a 'consulting fee.' During said period Plaintiff paid Berman's employees' wages, paid Berman's rent, and paid Berman's overhead, including the expenses of acquiring necessary equipment, to which equipment Plaintiff had the rights of ownership and possession during the life of and at termination of the contract. During said period Plaintiff assigned Berman various projects, which projects he worked on exclusively for the Plaintiff. Under the original consulting agreement all patent rights and prospective patent rights of Berman pertaining to his research on company-assigned projects were owned by or to be owned by Plaintiff. In this basic contract Plaintiff had no obligation to pay Berman any royalties on products developed. Berman also gave the Plaintiff the right of first refusal on any new product lines, research projects, inventions or other discoveries conceived by him or his employees during this time, even though they did not in fact arise out of any work specifically assigned to him by the Plaintiff, so long as the same were not subject to claim by another client of Berman. However, under the project assignment agreement dated November 14, 1962, assigning two specific projects to Berman, parties agreed that any patent rights or prospective patent rights created as a result of Berman's work on the two projects were to be assigned to a new corporation owned fifty-one percent (51%) by Plaintiff and forty-nine percent (49%) by Berman, and that Berman was to receive one-third of all royalties and license fees received by the new corporation.

"10. During the subject year 1963, Plaintiff purchased for cash approximately 93.5 percent of the outstanding stock of RCF Com-Tronics, Inc., a New York corporation whose principal place

of business and plant were located in Richland, New York, and whose principal business was research, development and manufacture of electronic paging equipment. The operation of this plant continued in New York until June, 1964, when its assets and operations were transferred to Waseca, Minnesota, where it was subsequently liquidated in 1966.

"11. Plaintiff was subjected to a franchise tax by the District of Columbia for the years 1961 through 1965, inclusive, because Plaintiff's sales representative, Samuel K. McDonald, Inc., an independent contractor, had an office in the District, and was Plaintiff's agent.

"12. The Plaintiff filed timely actions for refunds of Minnesota income taxes for the calendar years of 1961, 1962 and 1963, claiming that it had carried on its business within and without Minnesota, entitling it to apportion its net income for Minnesota income tax purposes pursuant to the provisions of Minn. St. 1961, § 290.17(4) and § 290.19.

"13. The Commissioner of Taxation has denied Plaintiff's claims for refund on all years by order dated August 6, 1971.

"14. The parties have stipulated that these three cases (i. e., for the years 1961, 1962 and 1963) may be consolidated for trial and decision."

The controlling case in Minnesota under these facts and circumstances is Tonka Corp. v. Commissioner of Taxation, 284 Minn. 185, 169 N. W. 2d 589 (1969). Mr. Justice Frank T. Gallagher, speaking for the court in that case, stated as follows:

"* * * Ordinarily, a manufacturer is not deemed to be carrying on a business outside the state if it sells its products in other states through completely independent contractors who solicit orders for approval at the manufacturer's home office, deal in other similar products, maintain their own sales offices, and utilize sales methods which are not subject to the manufacturer's control. See, Irvine Co. v. McColgan, 26 Cal. (2d) 160, 157 P. (2d) 847, 167 A. L. R. 934; W. J. Dickey & Sons, Inc. v. State Tax

Comm. 212 Md. 607, 131 A. (2d) 277. On the other hand, if it has employees in these other states who make actual, final sales there, handle no other similar products, perform customer services, operate out of branch offices provided by the manufacturer, and are controlled by its sales policies, the manufacturer is clearly carrying on a business in these states. See, Hans Rees' Sons v. North Carolina, 283 U. S. 123, 51 S. Ct. 385, 75 L. ed. 879. See, also, W. J. Dickey & Sons, Inc. v. State Tax Comm. *supra.*" 284 Minn. 189, 169 N. W. 2d 593.

The basic substantive and procedural facts in Tonka are somewhat similar to those in the case before us, in that the Tonka Corporation filed for a refund after having assigned its entire income to the state. This claim was rejected by the commissioner but subsequently granted by the Tax Court and affirmed by this court. Noticeable throughout this appeal is that respondent and the lower court were able to follow the precise pattern of setting forth the facts as that employed in Tonka. In Tonka, the representatives utilized to procure sales were under the same control and obligations as those assumed by representatives in this case. Yet, there, this court focused on one relationship with Tonka's New York office to support the conclusion that the corporation was carrying on a business partly without the state and was entitled to a refund. While Tonka's New York representative had many of the attributes which characterize an independent contractor, Tonka paid a large portion of his rental expense for office space and used his offices as its New York sales headquarters during the annual toy fair wherein 5 to 7½ percent of Tonka's annual sales were made and approved. The court went on to say:

"However, we have already pointed out that the evidence amply supports a finding that at least Tonka's New York sales representative was more like an employee than an independent contractor."

and further:

"Therefore, we hold that the evidence concerning the peculiar relationship between Tonka and its New York representative amply supports the Tax Court's determination that during the relevant years Tonka was carrying on a business partly within and partly without this state." 284 Minn. 193, 169 N. W. 2d 594.

It seems clear that the holding in Tonka focused upon the activities of the New York representative to find the necessary employee or agency relationship and some tangible income attributable to carrying on the business outside the state. In further stating that the evidence was much weaker with respect to Tonka's other sales representatives, we implied that the other representatives could not be categorized as other than independent contractors or representatives. We therefore suggested that, on the basis of its arrangement with sales representatives who were independent contractors, in the tax sense the company would not be "carrying on" business in another state.

If in the present case we could combine the duties and sales of the sales representatives, on the one hand, with the control, financing, and relationship between the company and Nelson Berman and RFC Com-Tronics, Inc., on the other, all of the elements of Tonka would be satisfied. However, there appears to be no precedent for such action. Since, in the 1973 amendment the legislature has clarified the meaning of the statute and has changed its basis for future application, we are not willing to expand our holding in Tonka for retrospective purposes only. The district court read adequate case law to conclude that "corporate activities," including research and development coupled with ownership of intangible property outside the state, were significant in the determination of whether the Johnson Company carried on business outside the state. We realize that we have been dealing in a gray area and that our determination in Tonka may not have been considered conclusive by the district court. However, since the evidence here is far less convincing than in the Tonka case, we deem reversal justified.

The facts establishing the relationship of Johnson with RFC Com-Tronics, Inc., and the research and development activities of Nelson Berman speak for themselves. The evidence with regard to the former shows activities of a separate corporation carried on within its own organization in New York. In the latter, Berman's development activities cannot be seen as those of an employee working under the exclusive control of Johnson, but rather as those of an independent development firm which offered its services to Johnson.

Nor does it seem that the payment of the Washington, D. C., franchise tax would satisfy the requirement of carrying on business in the District of Columbia, were we to adopt the Tennessee rule which requires that a corporation claiming to be carrying on its business in another state must prove that it was subject to income taxes in that state. See, John Ownbey Co. v. Butler, 211 Tenn. 366, 365 S. W. 2d 33 (1963); Roane Hosiery, Inc. v. King, 214 Tenn. 441, 381 S. W. 2d 265 (1964).

We are therefore strictly limiting the Tonka case to its facts and, in light of the 1973 amendment, see no need for expanding that doctrine.

Reversed.