PMH PROPERTIES, Appellant,

v.

Milt NICHOLS, et al., Respondents.

No. 46805.

Supreme Court of Minnesota.

Feb. 17, 1978.

Henson & Tully and Alan C. Eidsness, Minneapolis, for appellant.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and John D. Healy, Jr., and Theodore J. Meyer, St. Paul, for respondents.

Heard before KELLY, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

SHERAN, Chief Justice.

Appellant, PMH Properties, brought an action arising out of a real estate transaction against the respondents in district court, alleging breach of fiduciary duty by an agent, fraud, and interference with contractual relations. After presentation of appellant's case in chief, the trial court granted respondents' motion for a directed verdict. Appellant appeals from the judgment entered following this order. Because the trial court erred in taking the case away from the jury, we reverse and remand for trial.

Appellant, PMH, is a partnership engaged in the purchase and sale of real estate. It has three partners, Jack L. Pfeilsticker, William J. Miller, and Gary E. Henkel, two lawyers and a businessman, respectively. In February 1974, one of the partners met with respondent Milton Nichols, who was a partner in the respondent Benson-Mecay partnership and an officer and real estate agent of the respondent Twin Town Realty, a Minnesota corporation, and informed him of PMH's interest in buying and selling apartment buildings. In response to this inquiry, Nichols said that although he did not have a listing at that time to meet the needs of PMH, he would contact them if he located one. In May 1974, Nichols entered into a listing agreement with the owner of several apartment buildings in St. Paul. He notified PMH, and the following day he took two of the partners to inspect the buildings. After explaining PMH's plans to renovate and then resell the buildings, one of the partners orally offered Nichols the opportunity to manage the buildings for 5 percent of the gross rent and the listing for resale. Nichols disclosed this management offer to the seller.

A number of offers and counteroffers followed. The seller initially asked for $255,000 with a $50,000 to $55,000 down payment but later lowered this to $230,000 and $30,000 respectively. When Nichols learned that PMH needed $5,000 additional cash to meet the down payment, he offered either to loan it the money or to contribute $5,000 as a capital contribution and become a partner. The partnership instead added a contingency to the proposed purchase agreement, accepting the seller's terms but

requesting a 10-day period to obtain $5,000 from the bank. Nichols said that another party was interested in the buildings, but that he "was sure that [PMH] had a deal." The identity of the other party was not disclosed.

The next day PMH successfully arranged to receive the $5,000 from the bank. A partner then met with Nichols and removed the proposed contingency term. At the same time, Nichols told the partner that there was another prospective purchaser. He did not disclose the identity of the other party or the terms of its offer but did say that the figures were about the same and that the other party offered a higher down payment.

The other party turned out to be Benson-Mecay, a partnership in which Nichols was a partner. The principal partners were Gary Benson, the president of Twin Town Realty, a corporation in which Nichols was an officer, and Robert Mecay. Mecay had seen the terms of the PMH proposal. The Benson-Mecay partnership offered $232,000, with $32,000 in cash, as "just a price that [they] decided to offer on the property." This was accepted by the owner. After the sale, Nichols managed the property for Benson-Mecay and received $120 per month for his services.

PMH then brought an action in district court against Nichols, Benson, and Mecay, as individuals, and Twin Town Realty and Benson-Mecay partnership, alleging breach of a fiduciary duty by an agent, fraud, and interference with contractual relations. After PMH rested its case, the trial court granted a motion by respondents for a directed verdict on the grounds that: (1) It was a legal impossibility for Nichols to act as an agent for both the seller and PMH, the potential buyer; (2) although there was an agreement between PMH and Nichols that if the property was purchased by PMH

Nichols would manage it for PMH and that if it was resold it would be listed with Nichols' firm, those were not matters that created an agency; (3) although the conduct of Nichols by being in a group that eventually purchased the property may not be the most desirable conduct, it did not constitute actionable conduct. The trial court did not make specific remarks with respect to the claims of fraud or interference with contract. It is from this decision that PMH appeals.

The major issue presented by this appeal is whether respondent Nichols owed a fiduciary duty to appellant, PMH, which he breached by competing with PMH. Although appellant suggests a number of possible theories under which a fiduciary duty could be found to exist,[1] agency principles are preferred by the courts. If Nichols can be labeled an agent of PMH, it would be impossible to characterize their dealings as arms-length, and he would owe PMH a fiduciary duty of full disclosure.

The trial court stated that it was legally impossible for Nichols to perform his duty as an agent for both the seller and PMH, the potential buyer, arguing, in effect, that such dual agency was against public policy. The trial court apparently found support for this position[2] in cases that hold that dual agency is against public policy if the agent fails to fully disclose his dual agency to both principals. See, e. g., *Anderson v. Anderson*, 293 Minn. 209, 197 N.W.2d 720 (1972); Restatement, Agency 2d, §§ 391, 392. Disclosure of the agency relation becomes important, however, not for determining whether a dual agency in fact exists, but for deciding whether the complaining principal has an available remedy. See *Cinco Exploration Co. v. American Bank of Commerce*, 529 S.W.2d 852, 857 (Tex.Civ.App.1975). As this court stated in *Anderson v. Anderson*, 293 Minn. 209, 216, 197 N.W.2d 720, 724:

---

1. Appellant argues in the alternative that an agency relationship existed between the parties under which Nichols was to manage the property for PMH, that a real estate agent has a duty of good faith and honesty not to compete, that the respondents' nondisclosure of material

facts constituted fraud, and that the respondents interfered with its contractual relations.

2. It is impossible to understand the basis of the trial court's decision because the court failed to file a memorandum to its order.

"* * * [T]he principal or employer ignorant of the double agency may at his election not only rescind the contract but also defeat the agent's right to receive or retain any compensation for his services. * * * These consequences follow even though the principal ignorant of the duplicitous agency cannot prove actual injury to himself or that the agent committed an intentional fraud. Nothing will defeat the principal's right or remedy except his own prior consent or ratification after full disclosure of all the facts."

■ A dual agency is not per se against public policy, and numerous courts have so held. See, e. g., *Sharpe v. Bradley Lumber Co.*, 446 F.2d 152, 155 (4 Cir. 1971), certiorari denied, 405 U.S. 919, 92 S.Ct. 946, 30 L.Ed.2d 789 (1972); *Knudson v. Weeks*, 394 F.Supp. 963, 975 (W.D.Okla.1975). This court has also recognized that a dual agency may exist. *Anderson v. Anderson, supra; Bakke v. Keller*, 220 Minn. 383, 19 N.W.2d 803 (1945); *James E. Carlson, Inc. v. Babler*, 144 Minn. 125, 174 N.W. 824 (1919). Thus, a dual agency would not be impermissible as a matter of law,[3] and the trial court erred in concluding otherwise.

■ The second theory under which the court directed the verdict for respondents was that PMH had failed to present a prima facie case of agency. This court permits a trial court to grant a motion for a directed verdict—

"* * * only in those unequivocal cases where (1) in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2)

it would be contrary to the law applicable to the case." *J. N. Sullivan & Associates, Inc. v. F. D. Chapman Construction Co.*, 304 Minn. 334, 336, 231 N.W.2d 87, 89 (1975).

See, also, *Stenzel v. Bach*, 295 Minn. 257, 203 N.W.2d 819 (1973); *Jacoboski v. Prax*, 290 Minn. 218, 187 N.W.2d 125 (1971). Furthermore, in ruling on a motion for a directed verdict, the trial court must view the evidence most favorably to the adverse party by admitting the credibility of the evidence in its favor and drawing all reasonable inferences from it. *Stenzel v. Bach, supra; Jacoboski v. Prax, supra; Lovejoy v. Minneapolis Moline Power Implement Co.*, 248 Minn. 319, 79 N.W.2d 688 (1956). Thus, if appellant introduced evidence from which the existence of an agency relation between PMH and Nichols could be reasonably inferred, the direction of the verdict was improper.

■ The existence of an agency relationship is a question of fact. *Jurek v. Thompson*, 308 Minn. 191, 241 N.W.2d 788 (1976); *Tonka Corp. v. Commr. of Taxation*, 284 Minn. 185, 169 N.W.2d 589 (1969). In *Jurek*, this court used the language of Restatement, Agency 2d, § 1, to define agency as (308 Minn. 197, 241 N.W.2d 791)—

"* * * the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act."

See, *Tonka Corp. v. Commr. of Taxation, supra*. As stressed in the comments to this section of the Restatement, agency is a legal concept which the law imputes to the factual relation between the parties.

---

**3.** Respondents argue that a dual agency here would be against public policy and in violation of Minn.St. 82.33, subd. 2, which requires listing agreements to be in writing to be enforceable by a licensed real estate agent. Minn.St. 82.33, subd. 2, states: "No person required by this chapter to be licensed shall bring or maintain any action in the courts for any commission, fee or other compensation with respect to the sale, lease or other disposition or conveyance of real property, or with respect to the negotiation or attempt to negotiate any sale, lease or other disposition or conveyance of real

property unless such property was first listed in writing for sale, lease or other disposition with the person bringing or maintaining the action."

This provision, however, only makes the lack of a written contract a bar to an action *brought by the broker*, since its aim is to regulate the conduct of licensed agents and not that of the parties they represent. Thus, failure to comply with Minn.St. 82.33, subd. 2, if shown, would not necessarily make an agreement unenforceable between the parties.

"Agency is a legal concept which depends upon the existence of required factual elements: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking. The relation which the law calls agency does not depend upon the intent of the parties to create it, nor their belief that they have done so. To constitute the relation, there must be an agreement, but not necessarily a contract, between the parties; if the agreement results in the factual relation between them to which are attached the legal consequences of agency, an agency exists although the parties did not call it agency and did not intend the legal consequences of the relation to follow." Restatement, Agency 2d, § 1, comment *b*.

Thus, before a court will impose a legal obligation on a person to act like an agent, the plaintiff must first introduce factual evidence that he sought this arrangement and that the alleged agent consented to it.

Appellant contends that the jury could have found that Nichols agreed to PMH's offer that he manage the properties and then resell them and that this agreement created an agency relation between the parties. Respondents argue, in response, that the alleged management agreement never went beyond the discussion stage, that no binding agreement was reached, and that nothing was ever put in writing.

The creation of an agency relation, however, need not be in writing. *Watson v. McCabe*, 527 F.2d 286 (6 Cir. 1975); *Medallion Tower, Inc. v. Fort Lauderdale Tech. Col. Inc.*, 323 F.Supp. 180 (E.D. La.1970); *Clifton Cattle Company, Inc. v. Thompson*, 43 Cal.App.3d 11, 117 Cal.Rptr. 500 (1974). An oral offer can be accepted orally or by conduct. See, *Rausch v. Aronson*, 211 Minn. 272, 1 N.W.2d 371 (1941); *Grundmeyer v. McFadin*, 537 S.W.2d 764, 768 (Tex.Civ.App.1976). Furthermore, when the evidence is conflicting, whether an agency relation exists presents a question of fact for the trier of fact—in this case the jury—to determine. *Karlen v. Butler Mfg. Co.*, 526 F.2d 1373 (8 Cir. 1975); *Meerdink v. Krieger*, 15 Wash.App. 540, 550 P.2d 42 (1976).

Because we believe that ample evidence was introduced from which the jury could have concluded that respondent Nichols agreed to manage and resell the apartments for PMH, thereby becoming its agent, the decision of the trial court must be reversed. If the jury so found, this agreement would have made Nichols a dual agent of PMH and the respondents, thus requiring full disclosure to PMH. Since this conclusion is dispositive of the appeal, there is no reason to reach the other arguments raised by appellant.

The case is reversed and remanded for trial.