**U.S. BANK NATIONAL ASSOCIATION, d/b/a Elan Financial Services, Plaintiff,**

v.

**SAN ANTONIO CASH NETWORK, et al., Defendants.**

**Civ. No. 17–275 (RHK/TNL)**

United States District Court, D. Minnesota.

Signed May 17, 2017

Vernle C. "Skip" Durocher, Jr., Jaime Stilson, Nathan J. Ebnet, Dorsey & Whitney LLP, Minneapolis, Minnesota, for Plaintiff.

Bethany D. Krueger, Sybil L. Dunlop, Greene Espel PLLP, Minneapolis, Minnesota, for Defendant Loomis Armored US, LLC.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, United States District Judge

### INTRODUCTION

Plaintiff U.S. Bank National Association d/b/a Elan Financial Services ("Elan") previously provided cash for ATMs operated by Defendant San Antonio Cash Network ("SACN"). After discovering that more than $1 million of its money was missing, Elan commenced this action against SACN and two other entities—Defendant Pendum LLC ("Pendum") and its successor, Defendant Loomis Armored US, LLC ("Loomis"), which transported the cash on Elan's behalf—for breach of contract and related claims. Presently before the Court is Loomis's Motion to Dismiss. For the reasons that follow, the Motion will be granted in part and denied in part.

### BACKGROUND

The Amended Complaint alleges the following facts. In February 2011, Elan entered into a contract (the "Cash Provisioning Agreement" or "CPA") with Pendum (defined in the CPA as the "Carrier") and SACN (defined as the "ATM Manager" or "Owner") to provide cash for SACN's ATMs in the San Antonio, Texas area. (Am. Compl. ¶ 10 & Ex. 1 at 1.)[1] A short time later, Loomis assumed all of Pen-

---

1. The CPA is attached to and referenced throughout the Amended Complaint and hence may be considered on a motion to dismiss. See Fed. R. Civ. P. 10(c); Illig v.

dum's obligations under the CPA. (Id. ¶ 11.) Accordingly, for ease of reference, the Court refers to Loomis hereafter as the contracting party.

Under the terms of the CPA, Loomis agreed to act as Elan's agent, securely transporting and delivering its cash to SACN's ATMs. (Id. ¶ 12.) Ownership of the cash remained with Elan until withdrawn by a customer; no ownership interest transferred to Loomis or SACN, and the CPA expressly provided that SACN acted as bailee for the cash and bore the risk of its loss while in the ATMs. (Id. ¶¶ 13–14.) Further, the CPA provided that SACN was not to have access to Elan's cash at any time—only Loomis was permitted access, including while the cash was contained in the ATMs. (Id. ¶ 16.)

Each SACN ATM stored cash in an interior vault secured by an electronic lock. (Id. ¶ 27.) Access to the vault requires a code and a key that has been programmed to open it. (Id.) SACN's ATM vaults can be opened with several different types of keys, including "route keys" (allowing the Carrier to replenish cash in an ATM), "maintenance keys" (allowing ATM repairs), and "bank keys" (allowing bank personnel access to the vault). (Id.) Loomis, as the Carrier, was responsible for securely maintaining all ATM vault keys and was not to permit "any representative of any other entity to have access to the cash contained in [SACN's] ATMs." (Id. ¶ 17.) Loomis also agreed to maintain systems and procedures for preventing the loss or misuse of Elan's funds and to notify it after becoming aware of a loss. (Id. ¶ 18.)

On November 10, 2016, SACN employee Christopher Ott informed Elan that SACN's President, Joe Vasquez, had access to SACN's ATM vaults. (Id. ¶ 24.) Ott reported that Vasquez was engaging in "suspicious activity" and was "moving money around." (Id.) Elan immediately directed Loomis to remove its cash from SACN's ATMs. (Id.) When it attempted to do so, records revealed there was less money in the ATMs than there should have been. (Id.) In some instances the ATMs were completely empty; in other instances, the locks had been changed and Loomis was unable to access the vaults. (Id.) All told, more than $1 million of Elan's cash was unaccounted for. (Id. ¶ 29.) Elan later confronted Vasquez and, according to the Amended Complaint, he admitted accessing SACN's ATM vaults and stated that he had obtained three vault keys from Pendum "years ago." (Id. ¶ 28.)

Elan then undertook an investigation and requested ATM journals and lock audits for SACN's 23 San Antonio ATMs. (Id. ¶ 31.) Loomis, however, was only able to provide audit reports for seven of the 23 ATMs because the locks on the remaining 16 had either been damaged or replaced. Nevertheless, the available audits "overwhelmingly indicate[d] a pattern of unauthorized use of the ATMs" and revealed a number of "highly unusual and suspect access[es] to the ATM vaults" (id. ¶¶ 34, 40), including one occasion on which cash was deposited by Loomis into an ATM and then removed a short time later by someone using a bank key. Indeed, according to the Amended Complaint, "[b]y 2014, supervisor audits demonstrate[d] that Loomis was aware of unauthorized use of bank keys to access the ATMs," but it "never deactivated the bank keys" affording such access. (Id. ¶¶ 39–44.)

On January 27, 2017, Elan commenced this action against SACN, Pendum, and Loomis. Its Amended Complaint[2] asserts

---

Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011).

2. Elan amended its Complaint in response to the Court's concerns about diversity jurisdiction.

seven causes of action, only five of which are alleged against Loomis: breach of contract (Count I), negligence (Count II), breach of the implied covenant of good faith and fair dealing (Count III), accounting (Count IV), and breach of fiduciary duty (Count V). Loomis now moves to dismiss each of these claims, except the breach-of-contract claim.[3] The Motion has been fully briefed and is ripe for disposition.

## STANDARD OF DECISION

A complaint will survive a motion to dismiss only if it includes "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555, 127 S.Ct. 1955; accord Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Rather, the plaintiff must set forth sufficient facts in his Complaint to "nudge[ ] the[ ] claim[ ] across the line from conceivable to plausible." Twombly, 550 U.S. at 570, 127 S.Ct. 1955. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [party] has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955). In reviewing such a motion, the Court "must accept a plaintiff's specific factual allegations as true but [need] not ... accept ... legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).

**3.** In response to Loomis's Motion, Elan has agreed to voluntarily dismiss its accounting claim. (See Mem. in Opp'n at 20.)

**4.** Minnesota law applies here because no party has raised a choice-of-law issue. See, e.g.,

## ANALYSIS

### I. Negligence

Loomis first argues that Elan's negligence claim must be dismissed because it overlaps with the breach-of-contract claim. The well-known elements of a negligence claim are duty, breach, causation, and damages. See, e.g., Engler v. Ill. Farmers Ins. Co., 706 N.W.2d 764, 767 (Minn. 2005) ("The four elements of negligence are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) the breach of the duty being the proximate cause of the injury.") (citation omitted).[4] It is the (alleged) existence of a duty here that forms the basis for Loomis's argument.

 Minnesota recognizes the "independent-duty" rule, providing that "when a contract defines a relationship between two parties, a plaintiff is not entitled to recover tort damages save for exceptional cases in which a breach of contract 'constitutes or is accompanied by an independent tort.' " Russo v. NCS Pearson, Inc., 462 F.Supp.2d 981, 994 (D. Minn. 2006) (Ericksen, J.) (quoting Wild v. Rarig, 234 N.W.2d 775, 789–90 (Minn. 1975)). Stated differently, the "duty" supporting a negligence claim must arise from something other than a contract—a claim will lie only "if a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself." Constr. Sys., Inc. v. Gen. Cas. Co. of Wis., Civ. No. 09-3697, 2011 WL 3625066, at *9 (D. Minn. Aug. 17, 2011) (Kyle, J.) (citation omitted); accord, e.g., Berger v. Nationstar Mortg. LLC, 118 F.Supp.3d 1121, 1125 (D. Minn. 2015) (Nelson, J.) ("[U]nder Minnesota

BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003). The Court also notes that the CPA contains a Minnesota choice-of-law clause. (See Am. Compl. Ex. 1 at 13.)

law, a plaintiff does not have a cause of action for negligent breach of a contractual duty.") (citation omitted). The purpose of this rule is to prevent contract claims from morphing into tort claims. E.g., Kaplan v. Mayo Clinic, 947 F.Supp.2d 1001, 1008 (D. Minn. 2013) (Tunheim, J.) (independent-duty rule designed "to insure that contract law is not swallowed by tort law") (citation omitted).

■ In the Court's view, the independent-duty rule applies with full force here. It is only because of the CPA that Loomis bore any obligation to safeguard Elan's cash, and indeed, this is precisely the basis for Elan's breach-of-contract claim. It alleges that the CPA obligated Loomis to secure the ATM vault keys and maintain systems and procedures "[t]o prevent the loss or misuse of Elan's Currency" (Am. Compl. ¶¶ 17–18), and it further alleges Loomis breached those obligations by failing to take such steps (id. ¶ 50). The negligence claim, therefore, is simply a contract claim in tort clothing.

■ Elan offers several arguments in response, but none is persuasive. It first argues that "the mere existence of a governing ... contract does not preempt or eliminate the possibility of a tort claim." (Mem. in Opp'n at 9 (quoting TCF Nat'l Bank v. Market Intelligence, Inc., Civ. No. 11-2717, 2012 WL 3031220, at *4 (D. Minn. July 25, 2012) (Tunheim, J.)).) That may well be true, but it also misses the point. The issue is not whether a contract exists but rather whether some duty exists *independent from the contract*. Constr. Sys., 2011 WL 3625066, at *9. This leads to Elan's second argument: Loomis owed it

independent legal duties "not to expose [it] to reasonably foreseeable risks of injury." (Mem. in Opp'n at 10.) But this is simply a restatement of general tort law; all persons owe duties to those around them "to exercise reasonable care [to prevent] foreseeab[le] ... injury." Domagala v. Rolland, 805 N.W.2d 14, 26 (Minn. 2011); accord, e.g., Cracraft v. City of St. Louis Park, 279 N.W.2d 801, 809 (Minn. 1979) (Kelly, J., dissenting) ("The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others."). If a plaintiff could escape application of the independent-duty rule by citing the generic duty to prevent foreseeable harm, then the exception would swallow the rule, as a negligence claim would *always* lie regardless of the existence of a contract. Clearly that is not the law. See also Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc., 896 N.W.2d 115, 126, 2017 WL 1316142, at *5 (Minn. Ct. App. Apr. 10, 2017) (affirming dismissal of tort claim based on theft of funds by defendants because "[a]ny legal duty that [defendants] had toward funds owed to [plaintiff] ... arose from the [parties'] contracts").

Elan also argues that the independent-duty rule "is about damages," designed to prevent double recovery—in contract and in tort—for a single breach of contract. (Mem. in Opp'n at 8.) While an accurate statement of the law, this does nothing to salvage its negligence claim, because in the absence of independent tort damages, no negligence claim may lie. Engler, 706 N.W.2d at 767. And here, Elan points to no damages that might exist in this case beyond the value of its allegedly stolen cash—precisely the same damages from the alleged breach of contract.[5]

---

5. Elan contends that by failing to prevent the theft of its currency, Loomis *"participated* in Vasquez's scheme to steal" the money. (Mem. in Opp'n at 10 (emphasis added).) But the damages flowing from that alleged "participation" still would not differ from those flowing from the alleged breach of contract: the

value of Elan's lost cash. In any event, Elan brought claims for conversion and civil theft against SACN, but it opted *not* to assert those claims against Loomis, belying the suggestion that it was a "participant" in the alleged thievery.

Elan also attempts to invoke an exception to the independent-duty rule for "specialized professionals." (Mem. in Opp'n at 11–12.) To be sure, Minnesota recognizes this exception, but it has been "limited to a handful of specialized professionals such as '[a]rchitects, doctors, engineers, attorneys, and others.'" Russo, 462 F.Supp.2d at 994 (quoting City of Mounds View v. Walijarvi, 263 N.W.2d 420, 423 (Minn. 1978)). The Minnesota Supreme Court has explained the rationale:

> Architects, doctors, engineers, attorneys, and others deal in somewhat inexact sciences and are continually called upon to exercise their skilled judgment in order to anticipate and provide for random factors which are incapable of precise measurement. The indeterminate nature of these factors makes it impossible for professional service people to gauge them with complete accuracy in every instance. Thus, doctors cannot promise that every operation will be successful; a lawyer can never be certain that a contract he drafts is without latent ambiguity; and an architect cannot be certain that a structural design will interact with natural forces as anticipated. Because of the inescapable possibility of error which inheres in these services, the law has traditionally required, not perfect results, but rather the exercise of that skill and judgment which can be reasonably expected from similarly situated professionals.

City of Mounds View, 263 N.W.2d at 424. This explanation lays bare the problem with Elan's argument: there is nothing specialized about the delivery or safeguarding of money that would trigger the exception's application. Indeed, protecting and delivering cash is not an "inexact science" involving "indeterminate" matters

that would call for the application of learned skills. Id.

Lastly, Elan argues that dismissal of the negligence claim is premature, as application of the independent-duty rule typically occurs at the summary-judgment stage. But as Loomis correctly notes, courts repeatedly have granted motions to dismiss tort claims barred by the rule. See, e.g., Berger, 118 F.Supp.3d at 1125; TCF Nat'l Bank, 2012 WL 3031220, at *7; Best Buy Stores, L.P. v. Developers Diversified Realty Corp., Civ. No. 05-2310, 2007 WL 4191717, at *5 (D. Minn. Nov. 21, 2007) (Doty, J.). The Court perceives no reason to proceed differently here. Elan also suggests the negligence claim may stand because it is permitted to plead alternative theories of relief. (Mem. in Opp'n at 15–16.) That of course is true. See Fed. R. Civ. P. 8(d)(3). But each claim pleaded by Elan—even if alleged in the alternative—must be plausible, Twombly, 550 U.S. at 547, 127 S.Ct. 1955, and in the absence of any allegations supporting an independent duty, the negligence claim has not been plausibly pleaded here.

For all of these reasons, the negligence claim fails as a matter of law.[6]

## II. Breach of fiduciary duty

■ Loomis next argues that the logic for dismissing the negligence claim applies equally to the breach-of-fiduciary-duty claim. In particular, it argues that it owed no duty to Elan separate and apart from its obligations under the CPA and, accordingly, this claim is also barred by the independent-duty rule. Elan responds that Minnesota recognizes another exception to the independent-duty rule where the parties are in a fiduciary relationship. (Mem. in Opp'n at 12–13.) Elan is correct.

---

**6.** In a footnote at the end of its brief, Elan requests leave to replead this claim if the Court were to find it wanting. Because the claim fails as a matter of law, the Court declines Elan's request.

■ The CPA expressly designated Loomis as Elan's agent "for the specific purpose of Elan's delivery of currency." (Am. Compl. Ex. 1 at 3.) In Minnesota, an agent owes fiduciary duties to its principal. See, e.g., PMH Props. v. Nichols, 263 N.W.2d 799, 801 (Minn. 1978).[7] Where such duties exist, even if arising from a contract, an alleged breach of those duties is "distinct from the [alleged] breach of contract," Jones v. W. Union Fin. Servs., Inc., 513 F.Supp.2d 1098, 1100 (D. Minn. 2007) (Doty, J.), and hence the independent-duty rule will not apply, Walker v. Bank of Am., N.A., Civ. No. 11-783, 2013 WL 5771154 (D. Minn. Oct. 24, 2013) (Montgomery, J.); see also Berger, 118 F.Supp.3d at 1126 (noting that existence of fiduciary duty will overcome independent-duty rule). Accordingly, the independent-duty rule does not bar this claim.

■ Loomis contends use of the word "agent" in the CPA is not sufficient to create a fiduciary relationship, because elsewhere the contract uses the word "fiduciary" in relation to SACN. (Reply at 10–11.) "Where SACN has been identified as a fiduciary, and Loomis has not, the Court must assume Loomis was deliberately excluded from this categorization." (Id. at 11.) Yet, the agreement also specified that Loomis was to act as Elan's agent, and as already noted, under Minnesota law (which is applicable per the terms of the CPA) an agent owes fiduciary duties to its principal. In other words, the agreement simply is ambiguous regarding the parties' relationship, and in light of that ambiguity, the Court cannot conclude the claim should be dismissed at this juncture.

■ Elan also contends that the scope of Loomis's agency was limited by the CPA to "delivery of [Elan's] currency" but the breaches alleged here concern matters beyond simple delivery. (Reply at 12–13.) Indeed, the Amended Complaint nowhere alleges that Loomis failed to deliver Elan's currency to any of SACN's ATMs, and hence Loomis argues the alleged fiduciary breaches do not implicate any duties it (purportedly) owed to Elan. (Id.) While creative, this argument misses the mark. Among other things, an agent owes its principal a fiduciary duty to disclose all facts which might affect the principal's rights. See, e.g., Appletree Square I Ltd. P'ship v. Investmark, Inc., 494 N.W.2d 889, 892 (Minn. 1993); White v. Boucher, 322 N.W.2d 560, 564 (Minn. 1982). Here, with respect to the delivery of Elan's cash, Loomis knew—from the very terms of the CPA itself—that the cash was to be delivered to ATMs *for use by customers*. Hence, if it were true that "[b]y 2014, ... Loomis was aware of unauthorized use of bank keys to access the ATMs" (Am. Compl. ¶ 42), it is plausible that Loomis should have disclosed this fact to Elan to avoid the impairment of the cash being preserved for customer use.

### III. Breach of implied covenant of good faith and fair dealing

■ Finally, Loomis argues that Elan's claim for breach of the implied covenant of good faith and fair dealing must be dismissed. There is no dispute that Minnesota law implies a covenant of good faith and fair dealing into every contract. E.g., In re Wren, 699 N.W.2d 758, 765 n.10 (Minn. 2005) (quoting In re Hennepin Cty. 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995)). Breach of this implied covenant requires a showing of "bad faith," namely, "an ulterior motive for [a party's] refusal to perform a contractual duty." Minnwest Bank Cent. v. Flagship

---

7. Loomis cites cases from Iowa and Washington to "dispute[] that an agency relationship is synonymous with a fiduciary relationship." (Reply at 11–12.) As Minnesota law applies, these cases are inapposite.

Props. LLC, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004). According to Loomis, Elan has not alleged facts supporting an inference that Loomis's (alleged) breach of contract was undertaken in bad faith. (Def. Mem. at 15.) The Court agrees.

To be sure, the Amended Complaint's allegations, if true, establish that Loomis knew someone was improperly accessing its cash and failed to take steps to prevent that access from reoccurring. But lacking from these allegations is any suggestion Loomis acted with an "ulterior motive," rather than simply out of inattention or negligence. Nor does the Court believe it would be reasonable to infer a nefarious motive from these facts (if proven). Indeed, it is noteworthy that Elan alleges a *negligence* claim against Loomis but *not* the intentional torts of civil theft or conversion, undermining the suggestion that Loomis's (purported) conduct was undertaken with evil motives in mind. As pleaded, therefore, Elan has failed to plausibly allege a claim for breach of the implied covenant.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Loomis's Motion to Dismiss (Doc. No. 16) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Motion is **GRANTED** with respect to the negligence claim (Count II of the Amended Complaint), and Count II is **DISMISSED WITH PREJUDICE** to the extent alleged against Loomis;

2. The Motion is **GRANTED** with respect to the implied-covenant-of-good-faith-and-fair-dealing claim (Count III of the Amended Complaint) and the accounting claim (Count IV of the Amended Complaint), and Counts III and IV are **DISMISSED WITHOUT PREJUDICE** to the extent alleged against Loomis; and

3. In all other respects, the Motion is **DENIED**.

The Court pauses to note one final issue. The ostensible basis for Loomis's Motion was to "streamline the case" for discovery (and otherwise) and prevent Elan's so-called "overreach" by "focusing ... on the real issue," namely, the alleged breach of contract. (Def. Mem. at 1, 15.) Loomis's Motion, however, has done very little—if anything—to "focus" the discovery in this case. Indeed, on one hand Loomis insists that Elan has pleaded a wild array of claims, and yet on the other it protests that most of Elan's claims simply duplicate its breach-of-contract claim. Loomis cannot have it both ways: if the claims truly overlap in the manner Loomis describes, then it is hard to conceive how discovery will be any different now that a handful of the duplicative claims have been dismissed. Although this case was filed in early 2017 and the Amended Complaint was filed nearly three months ago, the parties have not yet had even an initial pretrial conference, due to the pendency of Loomis's Motion. (See Doc. No. 18.) Loomis says it is "frustrated that [its] motion was necessary" (Def. Mem. at 15), but the Court is equally frustrated to have expended the time and resources necessary to resolve Loomis's Motion without having materially advanced this case toward resolution.